149 So.2d 367 (1963)
Rodney Lee CAMP, Appellant,
v.
STATE of Florida, Appellee.
No. 3222.
District Court of Appeal of Florida. Second District.
February 6, 1963.
*368 Rodney Lee Camp, in pro. per.
Richard W. Ervin, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
KANNER, Judge.
Appellant, defendant below, was by the jury found guilty of the crime of breaking and entering a dwelling house with intent to commit rape; and he was sentenced by the court to serve a term of from six months to fifteen years in the Florida State Correctional Institution. Appealing, he advances as the sole point for consideration the proposition that, under his plea of not guilty by reason of insanity, the evidence established that, at the time of commission of the crime, he was unable to distinguish right from wrong.
On the night in question appellant, who had been drinking, left the house for the purpose of finding a woman. He had previously been attracted to a 69 year old woman who lived alone. Recalling this, he proceeded by automobile to her house at about 1:30 a.m., gained entrance through a window, breaking out a screen. He thereupon heard his intended victim gasp and then start screaming. In the process of trying to restrain her, he choked and struck her in the eye with his fist, attempting meanwhile to force her to bed and trying also to lift her nightgown. A neighbor, having heard the screams, approached the house, calling out. Appellant fled precipitously, breaking a panel from the back door in the course of his escape from the scene. Testimony given by the arresting officer was to the effect that appellant appeared to be very nervous and had been drinking. As a result of the incident, the woman assaulted was in the hospital for four days.
Witnesses testifying for the State included the woman who had been attacked, the neighbor who came to her rescue, and the investigating officers. The only evidence offered by appellant was the testimony of one of the court-appointed psychiatrists. A confession which had been executed by appellant was admitted into evidence and read to the jury without objection. Through this narrative, appellant not only confirmed, essentially, the above events *369 which have been related, but he told of a succession of past experiences wherein he had repeatedly committed acts against and with various girls and women of a revolting and sordid nature, including unnatural sex acts. Appellant himself did not testify at the trial.
After appellant's attorney had filed notice of intention to defend on the basis of insanity, two psychiatrists were appointed by the trial court to examine appellant for the purpose of determining his mental condition. Through letters by each of these psychiatrists, the opinions were evinced, respectively, that appellant was competent to assist his counsel in his own defense at the trial and that appellant was mentally competent. The trial judge himself examined appellant prior to trial and entered an order adjudging that "* * * appellant is sane within the meaning of the law; that he does know right from wrong; that he does possess normal faculties which will enable him to assist his counsel in the trial of said cause, and to be conscious and aware of the procedures in Court."
The psychiatrist who testified on appellant's behalf, giving his opinion as to appellant's mental condition, made from the witness stand certain observations which we shall summarize. His testimony, in its pertinent phases, sets out that "* * * he was a sick man emotionally," based on what appellant told him and his own past experience in evaluating such situations. He felt that appellant "* * * was psychotic during this period where he went into Mrs. Varney's house and did what he did. I don't think he is completely aware of everything that happened. That is my opinion in retrospect." He also stated, "* * exactly when this started I truthfully can't say when, what point." Concluding the direct phase of his examination, from which the above excerpts were taken, the witness volunteered, "The thing I would like to add, when this state occurred where he didn't know right from wrong, I don't know really * * * but he definitely was psychotic at the time this was terminated * * *". Under cross-examination, the effect of his testimony was that appellant's condition was paranoiac schizophrenia with a lot of sexual psychopathology, that he felt appellant was in a paranoiac schizophrenic state and he knew right from wrong at and during the trial. Redirect examination elicited that appellant's mental condition on the night in question was psychotic; and he said, "Sometime between the time it started and the time it terminated he was psychotic." When asked the question whether appellant was insane when he decided to leave the house when the alarm was given, the doctor responded, "I think he was at that time." He further testified on recross that a person could be in a psychotic state and still realize the difference between right and wrong, even while in the psychotic state.
At the close of the case when all the testimony had been submitted, counsel for appellant made a motion for directed verdict of acquittal, asserting that, from the doctor's testimony, the accused did not know right from wrong at the time the crime was committed. The court ruled that it was a question which fell within the province of the jury.
A tenet firmly rooted in this jurisdiction is that one cannot be held legally responsible for an act committed by him while insane, although such act would be criminal if done by a sane person. Under the "right and wrong" test, if the accused had sufficient understanding to know what he was doing and knew that it was wrong, he is responsible for his act; or conversely, if he did not know the nature and quality of the act he was committing, or did know what he was doing but did not know that it was wrong, he is not responsible for his act. See 9 Fla.Jur., sections 29 and 30, pages 37, 38.
In the case of Evans v. State, Fla.App. 1962, 140 So.2d 348, the question of legal sanity is analyzed. The court pointed out the long recognition which has been accorded the principle that sanity is the normal condition of man and that, when charged with a crime, he is presumed to be sane. *370 The mere fact that one has committed a crime is not sufficient to overcome this presumption; but a defendant in a criminal case has the burden of establishing his plea of insanity by showing that he was legally insane at the time of commission of the crime. Said the court:
"The State of Florida has long adhered to the `right and wrong' test for the determination of the sanity of a criminal defendant; the test is also referred to as the M'Naghten Rule. See Piccott v. State, Fla. 1959, 116 So.2d 626; Davis v. State [44 Fla. 32, 32 So. 822], supra. This jurisdiction does not recognize that phase of insanity denominated under the title of `irresistible impulse' or `moral insanity' as a defense to a criminal prosecution. The only issue presented under the defense of legal insanity is whether the accused, at the time of the unlawful act alleged to have been committed by him, had a sufficient degree of reason to know that he was doing an act that was wrong. Griffin v. State, Fla.App. 1957, 96 So.2d 424; Brock v. State, Fla. 1954, 69 So.2d 344; Crews v. State, 1940, 143 Fla. 263, 196 So. 590."
See also Perry v. State, Fla.App. 1962, 143 So.2d 528.
Thus, it must be recognized that "irresistible impulse", or "moral insanity" is not a defense to a criminal prosecution. Nor is mere weakness of mind, ignorance, or deficiency in a mental function synonymous at law to lack of capacity sufficient to excuse commission of a crime unless the mental condition of its perpetrator is such as to render him incapable, at the time, of distinguishing right from wrong, in which event it is a defense. See 9 Fla.Jur., section 29, page 38.
The evidence in its totality, including testimony for the state, appellant's confession, and the expert testimony which we have summarized, created a question for the jury to decide whether or not appellant, at the time of the commission of the crime, knew right from wrong. The jury was appropriately charged. We find nothing to disturb the verdict and the judgment.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.