HENDRY, Judge.
Appellant, Thomas Francis French, was indicted for first degree murder. Pleas of not guilty and not guilty by reason of insanity were entered. Upon trial the jury found him guilty of first degree murder, with a recommendation of mercy. A motion for new trial was denied. The court entered judgment and sentenced the appellant to life imprisonment. This appeal is from the judgment and sentence.
Appellant contends that the trial court committed reversible error in denying his motion for a new trial. Counsel for appellant argues that the court should have granted the motion where it appeared that two court appointed psychiatrists testified at trial that French was insane at the time he committed the homicide and could not distinguish right from wrong and where such evidence was not rebutted by sufficient competent evidence. The state takes the position that the evidence of insanity that was offered was both incompetent and without evidentiary foundation, leaving a finding of sanity properly within the ambit of the jury.
During the afternoon of July 19, 1971, the defendant shot Jerry Fader, an employee of Mother’s Lounge. The shooting was in the presence of three witnesses.
*52 One of the witnesses, Diane Denning, testified that while she was sitting at the bar she saw the deceased talking to Patrick Lancaster and for no apparent reason, the defendant shot Fader in the head. She stated that she observed nothing unusual prior to the shooting.
Patrick Lancaster testified that while talking to Fader, the defendant, whom he had never seen before, left the bar, came back and sat down a few feet away. Ten minutes later defendant shot Fader from the back. He further testified that he took the gun away from the defendant and beat him over the head, but the defendant escaped by driving away in an automobile. During the struggle the defendant was heard to say, “I am a police officer; you’re under arrest,” and prior to the shooting the defendant said, “You’re not going to make it this time.” The witness stated that the defendant’s behavior prior to the shooting was not unusual and very calm.
The bar maid, Brenda Carrandias, testified that she saw the shooting and there was nothing unusual about the defendant’s behavior or conversation during the time she served him two drinks. She saw the defendant pull the gun and put it in the back of Fader’s neck.
Sergeant Marshall Frank, a homicide investigator with the Dade County Public Safety Department, testified that he spoke with the defendant, after he was returned from Greensboro, North Carolina, on the morning of July 23, 1971. The defendant told him the shooting was an accident, that he had no intention of shooting but that Mr. Lancaster hit his leg which caused the gun to fire. The defendant disagreed with Sergeant Frank’s testimony and stated that he had no recollection of the shooting.
The defendant testified that the shooting was the culmination of a prior incident in which he had taken a girl to his motel room one night, not realizing that her interest was money. She demanded $50.00 from him and he refused her demands. She threatened him, and defendant was thereafter repeatedly harassed and threatened by the woman and two men, one of whom wore a beard like that of the deceased. Mistaking the deceased for his antagonist, defendant stated he attempted to make a citizen’s arrest but did not recall the shooting. Several of the defendant’s neighbors did testify that the defendant had been threatened and confirmed that he was anxious over the safety of his son.
The two highly qualified psychiatrists, Drs. James L. Anderson and Paul S. Jarrett, who were appointed by the court, examined the defendant several weeks after the homicide was committed. The examinations consisted of a general physical examination, a neurological check and a psychiatric evaluation. Based upon their examination and evaluation of the defendant’s appearance and the history given them by the defendant, they testified to the effect that the defendant was insane at the time he killed the victim and that he did not know right from wrong.
The issue presented is whether the defendant knew right from wrong at the time he committed the offense.
Sanity being the normal condition of man, a presumption that he is sane exists when charged with a crime. The burden thus devolves upon one charged with a crime to establish his plea of insanity by showing that he was legally insane at the time of the commission of the act. McVeigh v. State, Fla.1954, 73 So.2d 694; Camp v. State, Fla.App.1963, 149 So.2d 367. However, where there is testimony of insanity sufficient to present a reasonable doubt of sanity, the presumption vanishes and the defendant is then entitled to an acquittal if the state does not overcome the reasonable doubt. Farrell v. State, Fla.1958, 101 So.2d 130.
The testimony on the issue of insanity was in conflict. However, the jury resolved the conflict by finding that the defendant was legally sane when he committed the offense. From our careful re *53 view of the entire record we are satisfied that the record contains sufficient competent evidence to support the jury’s verdict of sanity. Crum v. State, Fla.App. 1956, 172 So.2d 24; Sallavirta v. State, Fla.App.1968, 210 So.2d 487; Blatch v. State, Fla.App.1968, 216 So.2d 261.
Therefore for the reasons stated the judgment and sentence under review are affirmed.
Affirmed.