361 So.2d 776 (1978)
Ronny A. ZAMORA, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-2566.
District Court of Appeal of Florida, Third District.
July 20, 1978.
Rehearing Denied September 6, 1978.
*778 Ellis Rubin, Miami, for appellant.
Robert L. Shevin, Atty. Gen. and Ronald A. Dion, Sp. Asst. Atty. Gen., for appellee.
Before HENDRY and KEHOE, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HENDRY, Judge.
Appellant, Ronny A. Zamora, was charged, by way of a four count indictment, with first degree murder, burglary of a dwelling, possession of a firearm while committing a felony, and robbery. To those charges, Zamora entered a plea of not guilty, indicating that he would rely on the defense of insanity. At the conclusion of his trial, the jury returned verdicts of guilty on all four counts of the indictment.
Zamora was subsequently adjudicated in accordance with the verdicts and sentenced as follows: as to count I, first degree murder, Zamora was sentenced to a term of life imprisonment, with credit for time served in the Dade County Jail and parole eligibility in twenty-five years, pursuant to Section 775.082(1), Florida Statutes (1977); as to count II, burglary, he was sentenced to twenty-five years in the state penitentiary; as to count III, possession of a firearm, sentence was imposed at three years imprisonment; and as to count IV, robbery, Zamora was sentenced to a term of twenty-five years. All sentences were to run concurrently.
From the judgment of conviction and sentences, Zamora has taken this appeal raising seven points. We shall discuss each point in the order raised by appellant in his *779 brief, taking the liberty to rephrase those points where proper.

POINT I

WHETHER THE TRIAL COURT ERRED IN GRANTING IN PART THE STATE'S MOTION IN LIMINE THEREBY EXCLUDING CERTAIN VOIR DIRE INQUIRIES, TESTIMONY, EVIDENCE AND CROSS-EXAMINATION.
At trial, Zamora's insanity defense was based upon "involuntary subliminal television intoxication." On appeal, Zamora contends that certain rulings of the trial judge limiting the scope of defense counsel's inquiry into the area of television's effect upon sociopathic children effectively frustrated his insanity defense. In particular, appellant argues that the trial judge committed reversible error by failing to allow psychologist Dr. Margaret Hanratty Thomas to testify at trial on the effect of television violence upon adolescent viewers. We are not of the opinion that the court erred in granting the state's motion in limine thereby limiting inquiry into television and its effects on children.
In Florida, the test for insanity is the so-called M'Naghten Rule or "right and wrong" test. That is, a person is legally insane when he is precluded by mental disease from distinguishing between right and wrong at the time of the act. Wheeler v. State, 344 So.2d 244 (Fla. 1977); Perry v. State, 143 So.2d 528 (Fla. 2d DCA 1962). Irrestible impulse is not recognized as a defense in Florida. Wheeler v. State, supra; Witt v. State, 342 So.2d 497 (Fla. 1977). Likewise, diminished capacity is not recognized as a defense, unless a defendant's capacity is so diminished that he cannot distinguish right from wrong pursuant to the M'Naghten Rule. Bradshaw v. State, 353 So.2d 188 (Fla. 2d DCA 1977); Camp v. State, 149 So.2d 367 (Fla. 2d DCA 1963).
Based upon the law of insanity, as established in this state, the trial judge correctly limited the evidence of insanity to the M'Naghten standard. Sub judice, as brought out through proffer, Dr. Thomas' testimony would have been directed to the effect of television on adolescents, generally. She would have been, however, unable to testify that watching violent television programs to excess affects an individual to the extent that said individual would not be able to distinguish between right and wrong under the M'Naghten test. Her testimony, therefore, would not have been relevant to the proceedings.
A party is entitled to present evidence upon the facts that are relevant to his theory of the case, so long as that theory has support in the law. Steiger v. Massachusetts Casualty Insurance Co., 273 So.2d 4 (Fla. 3d DCA 1973). Relevancy describes evidence that has a legitimate tendency to prove or disprove a given proposition that is material to the case. Zabner v. Howard Johnson's, Inc. of Florida, 227 So.2d 543 (Fla. 4th DCA 1969). The only theory of the case that had support in the law was insanity, based upon the M'Naghten standard. Testimony that would not have tended to prove or disprove insanity was properly excluded, as being irrelevant. Dixie-Bell Oil Company, Inc. v. Gold, 275 So.2d 19 (Fla. 3d DCA 1973). As Dr. Thomas' testimony was not relevant as to the issue of insanity, it was properly excluded.
Appellant has additionally argued that he was unduly limited in examining those experts who were permitted to testify at trial. The record, however, does not support this allegation of undue limitation. In those instances where defense counsel was limited in his questioning, such limitation was imposed on the basis of relevancy in light of the M'Naghten standard.
Accordingly, appellant's point I is rejected.

POINT II

WHETHER THE TRIAL JUDGE ERRED, DURING VOIR DIRE, IN PRECLUDING DEFENSE COUNSEL FROM INQUIRY INTO THE POTENTIAL JURORS' VIEWS ON TELEVISION AND ITS EFFECT ON CHILDREN, AS WELL AS THEIR PARTICULAR VIEWING HABITS.
While appellant concedes that the trial judge has wide discretion in setting the *780 boundaries of voir dire examination of prospective jurors, it is defense counsel's contention that sub judice, the trial judge abused his discretion in limiting the voir dire examination so as to preclude any inquiry into the viewing habits of the prospective jurors, as well as an inquiry as to their attitude toward the defense of "involuntary subliminal television intoxication." Appellant contends that based upon this limitation, counsel was precluded from intelligently exercising his peremptory challenges resulting in possible undiscovered prejudice on the part of the jury.
Needless to say, a reversal based upon a limitation in voir dire must be based upon an abuse of the trial judge's discretion. Mizell v. New Kingsley Beach, Inc., 122 So.2d 225 (Fla. 1st DCA 1960). In the absence of demonstrable prejudice, not grounded upon mere speculation, reversal is not proper. Foley v. Revlon, Inc., 200 So.2d 627 (Fla. 3d DCA 1967).
A review of the record discloses that defense counsel was not precluded from inquiring as to whether or not the prospective jurors watched television, whether or not said prospective jurors had heard of or had formed any opinions as to the defense of insanity caused by "television intoxication," and whether or not the prospective jurors believed the defense of insanity to be a gimmick. The record reflects that defense counsel was prohibited from asking the jurors questions concerning their personal viewing habits. This final limitation did not even approach an abuse of the trial judge's discretion warranting reversal. Mizell v. New Kingsley Beach, Inc., supra.
The voir dire, itself, was extensive, encompassing over two days. The purpose of voir dire is to select a fair and impartial trier of fact. Gibbs v. State, 193 So.2d 460 (Fla. 2d DCA 1967). Appellant does not contend that the jury was partial or unfair, he merely contends that the two day voir dire was so limited so as to prohibit defense counsel's inquiry as to any possible partiality of the prospective jurors. The record, however, does not sustain appellant's contention and no abuse of the trial judge's discretion has been shown.
Therefore, we must reject appellant's point II.

POINT III

WHETHER THE TRIAL JUDGE ERRED IN REFUSING TO INSTRUCT THE JURY ON THE DEFENSE OF INSANITY AS TO COUNTS II, III AND IV, AND IN FAILING TO PROPERLY INSTRUCT THE JURY ON THE LAW OF INSANITY AS TO COUNT I.
As was stated at the outset, appellant's defense to the charges was insanity attributed to the "prolonged, intense, involuntary, subliminal television intoxication." During the charge conference, the trial judge agreed with the state's oral motion "to strike the insanity defense as to all but the first degree murder count" because "there was absolutely no testimony adduced to insanity with reference to anything but the count of first degree murder." As a result, the jury was not charged that Zamora could be found not guilty by reason of insanity as to counts II, III and IV of the indictment.
It is our opinion that the trial judge was correct in refusing to instruct the jury on insanity as to counts II through IV. While there was ample testimony elicited evaluating young Zamora as a sociopath, suffering from a lack of conscience and a personality or character defect, there was no testimony to the effect that Zamora was insane, pursuant to M'Naghten standards, with the one exception being defense psychiatrist Dr. Gilbert. Dr. Gilbert testified that at the moment Zamora fired the fatal shot, he did not know right from wrong. He also testified, however, that just prior to and after the firing of the gun, Zamora was not legally insane. As opined by Dr. Gilbert, Zamora's alleged insanity lasted no more than two to three seconds.
Accordingly, the trial judge was correct in instructing the jury on insanity as to count I of the indictment, first degree murder. Likewise, the judge was correct in *781 denying an insanity instruction as to counts II through IV, in that there existed a total absence of testimony to the effect that the defendant was insane, pursuant to M'Naghten, when he committed the acts for which he was charged in counts II through IV.
Appellant further argues that the trial judge erred in giving his own instruction on insanity pursuant to count I in light of Wheeler v. State, 344 So.2d 244 (Fla. 1977). It is appellant's contention that the Wheeler decision mandated that a trial judge, in instructing a jury on insanity, conform to the standard jury instructions as adopted by the Florida Supreme Court in In re Standard Jury Instructions In Criminal Cases, 327 So.2d 6 (Fla. 1976). He further contends that it was reversible error for the trial judge to offer his own instruction on insanity in lieu of the standard instruction.
Inherent in appellant's argument is the proposition that our Supreme Court, in Wheeler, opined a new test for insanity, superseding the M'Naghten standard. Appellant now claims that diminished capacity is a separate defense to a crime. We reject appellant's proposition. The Wheeler decision held that diminished capacity is a defense to a crime only when the defendant's capacity is so diminished to the point that the defendant cannot distinguish right from wrong, pursuant to the M'Naghten rule. Bradshaw v. State, 353 So.2d 188 (Fla. 2d DCA 1977); see also Camp v. State, 149 So.2d 367 (Fla. 2d DCA 1963). It was therefore correct for the trial judge to refuse to instruct the jury that diminished capacity, in and of itself, is a defense to a first degree murder charge.
In that the text of the trial judge's charge to the jury on insanity was substantively identical to the Florida Standard Jury instruction on the same subject, it is our opinion that any error on the trial judge's part for failure to charge the jury in accordance with the Wheeler mandate was harmless error. We reach the above decision for the following reason. As previously mentioned, only Dr. Gilbert testified that Zamora was insane at the time of the shooting and his testimony was not couched in terms of diminished capacity. Rather, Dr. Gilbert testified that Zamora did not know right from wrong. No other expert testified that the defendant was insane or that his capacity was so diminished as to render him oblivious of right from wrong. This made harmless the trial judge's failure to mention in his charge that under certain circumstances, diminished capacity might amount to insanity. Wheeler, supra.
In sum, the trial judge was correct in refusing to instruct the jury on insanity as to counts II through IV and did not commit reversible error in his insanity charge to the jury as to count I.

POINT IV

WHETHER THE TRIAL JUDGE ERRED IN REFUSING TO GRANT APPELLANT'S "EXTRAORDINARY AMENDED MOTION FOR NEW TRIAL" AFTER THE COURT HAD MADE A FINDING THAT THE STATE ATTORNEY'S OFFICE HAD VIOLATED THE RULE OF SEQUESTRATION.
On the third day of trial, following the conclusion of voir dire and the acceptance of the jury, witnesses who were to testify at trial were sworn and admonished that they were not to speak with anyone, except their attorneys, on matters relating to their impending testimony. State witnesses David Picciolo, Timmy Cahill and Alan Cohen were bound to the "rule." That night, the Assistant State Attorney assembled in the offices of the State Attorney the above witnesses. The alleged purpose of the meeting was for Cohen, a former friend of defense witness Tina Steiner, to call Steiner and attempt to ascertain whether or not she had knowledge of the existence and/or whereabouts of the gun used to slay the victim and certain jewelry stolen from the deceased's home.
The state thereupon caused two telephone conversations between Cohen and Steiner to be recorded, after first rehearsing Cohen as to what he was supposed to say. Following the taping of those conversations, *782 the tapes were played to the three state's witnesses, investigator O.B. Bosworth and Sergeant Duncan, who had been likewise sworn as a witness and bound by the sequestration rule.
Appellant contends that the recording and replaying of these conversations violated the court imposed rule, as said conversations were filled with "references to the ongoing trial and replete with references to testimony expected to be elicited in the defendant's case." Appellant's counsel argues that by the above violation, the prosecution was able to impugn the veracity of Steiner when she took the stand for the defense and impeach her credibility before the jury. Counsel claims that the "rule" violation deprived Zamora of the "unfettered testimony of a crucial witness to his insanity defense" and thus deprived him of a fair and impartial trial.
The purpose of the sequestration rule is to avoid the coloring of a witness's testimony. Ali v. State, 352 So.2d 546 (Fla. 3d DCA 1977). Sub judice, nothing in the tape recordings heard and discussed by the witnesses related to anything testified to in court. The taped conversations primarily concerned the location of the murder weapon, a fact not established before the jury.
There is no doubt that the state violated the sequestration rule and is admonished by this court for this impropriety. Nevertheless, the trial judge, in his discretion, determined that the information elicited during the violation of the "rule" in no way prejudiced appellant. Accordingly, the trial judge denied Zamora a new trial.
It goes without saying that the imposition of sanctions (if any) for the violation of the sequestration rule is well within the sound judicial discretion of the trial judge. See Griffin v. State, 124 So.2d 38 (Fla. 1st DCA 1960). Sub judice, the trial judge held that appellant occasioned no prejudice from the rule violation. In that appellant has failed to demonstrate actual prejudice to his case, we find no abuse of the trial judge's discretion in refusing to impose sanctions, in the form of a new trial.
Appellant's point IV is therefore rejected.

POINT V

WHETHER THE TRIAL JUDGE ERRED IN ADMITTING CERTAIN PHOTOGRAPHS OF THE VICTIM IN A "GRUESOME AND GORY STATE AFTER FIVE DAYS OF DECOMPOSITION" NOTWITHSTANDING APPELLANT'S WILLINGNESS TO STIPULATE TO THE VICTIM'S DEATH, THE CAUSES AND CIRCUMSTANCES SURROUNDING THE DEATH, AND THE POSITION IN WHICH THE VICTIM'S BODY WAS FOUND.
Appellant contends that the trial judge abused his discretion in admitting into evidence certain photographs of the victim, as said photographs were allegedly so inflammatory and prejudicial as to deprive appellant of a fair trial. Appellant further contends that the photographs had little or no relevancy in that the cause of death had been established, the insanity defense admitted the defendant's killing of the victim and appellant had previously offered to stipulate to the various circumstances surrounding the death of the victim, including the position in which the body was found.
The admission into evidence of photographs of a deceased victim is within the discretion of the trial judge. Swan v. State, 322 So.2d 485 (Fla. 1975); Allen v. State, 340 So.2d 536 (Fla. 3d DCA 1976). Relevancy, of course, is the controlling factor in the admission or denial of photographic evidence. Garmise v. State, 311 So.2d 747 (Fla. 3d DCA 1975).
Sub judice, the photographs were relevant in that they corroborated the testimony of certain witnesses, including the Assistant Medical Examiner of Dade County, as to the cause of death, the location and characteristics of the wounds, and the position of the body in reference to the physical make-up of the room. See Pressley v. State, 261 So.2d 522 (Fla. 3d DCA 1972); Tomlin v. State, 167 So.2d 745 (Fla. 2d DCA 1964). Notwithstanding appellant's offer to stipulate to the murder, the position of the body, etc., the testimony of the witnesses, *783 when combined with the corroborative photographs, aided the state in showing that Zamora's slaying of his elderly victim was of premeditated design, an essential element of first degree murder. Pressley v. State, supra. Obviously, appellant was not prepared to stipulate to premeditation, relieving the state of its burden of proof.
Lastly, with respect to the photographs under attack, it is our opinion that said photographs do not portray an exceptionally gruesome, gory or shocking view of the deceased. The pictures simply exhibit a body with a puncture mark wherein a fatal bullet had entered. We emphasize the word "exceptionally," for, understandably, no picture of a decomposing corpse is ever aesthetically appealing to normal senses. Aesthetic appeal is, however, not the test in determining whether to reject or accept evidence of this kind. Rather, the test is that the photographs must first be relevant and not "so inflammatory as to create an undue prejudice in the minds of the jury and detract them from a fair and unimpassioned consideration of the evidence." Leach v. State, 132 So.2d 329 (Fla. 1961) at 332. We are of the opinion that the photographs were relevant to the state's case and were not inflammatory to the point of prejudicing the minds of the jury.
We find no error in appellant's point V.

POINT VI

WHETHER THE TRIAL JUDGE ERRED IN NOT PERMITTING FULL CROSS-EXAMINATION OF A PROSECUTION WITNESS DIRECTLY RELATING TO IMPEACHMENT.
Appellant contends that he was denied full cross-examination of a prosecution witness, William Rinehart, whose testimony linked Zamora and co-defendant Darrell Agrella to the stolen property. He argues that the limitation imposed on cross-examination prohibited counsel for the defense from eliciting testimony that would have impeached the witness's credibility before the jury, i.e., that the witness had been involved in the crime to the extent of possessing some of the stolen goods and had received consideration in the past for his testimony.
In light of all the cumulative testimony presented and the defendant's confession to the crime, it is our opinion that the witness's testimony was in no real sense prejudicial to the defense. Accordingly, any limitation imposed by the trial judge on cross-examination must, at best, be deemed harmless error. Girtman v. State, 270 So.2d 380 (Fla. 3d DCA 1972); Section 59.041, Florida Statutes (1977).
Point VI is hereby rejected.

POINT VII

WHETHER THE TRIAL JUDGE ERRED IN RESPONDING EX PARTE TO A REQUEST MADE BY THE JURY.
Appellant's final attack on the proceedings is directed to an allegedly ex parte response made by the trial judge to the jurors' request to view themselves on television during the nightly replay of trial proceedings of the day. It is appellant's contention that the judge had the duty to have both the prosecution and defense present and discuss the request with them prior to communicating his response to the jury pursuant to Ivory v. State, 351 So.2d 26 (Fla. 1977). Appellant argues that his counsel's absence from participating in the discussion of the action to be taken on the jury's request amounted to reversible error.
The record, however, reveals that defense counsel was present when the trial judge responded to the jury's request in open court, denying same. Though counsel did not have an opportunity to discuss with the trial judge the request of the jury, we do not believe that the open court response of the judge amounted to an ex parte communication. Further, the Ivory case, which holds that ex parte communications of a trial judge to the jury in response to jury requests amount to harmful error, appears to have been based upon Fla.R.Crim.P. 3.410. Said rule requires the presence of opposing counsel when a response is made to a jury request by the trial judge during *784 deliberation. Such was not the case here, as the jury's request to view themselves on television was made long prior to final deliberation.
Point VII is, therefore, without merit.
In conclusion, we have carefully reviewed all of appellant's points on appeal in light of the record, briefs submitted, oral arguments of counsel and controlling principles of law. It is our opinion that no reversible error has been shown and that Ronny Zamora's conviction and sentences must be affirmed. It has often been stated that a defendant is not entitled to a perfect trial, but is entitled to a fair trial. We are convinced that Zamora did receive a fair trial.
One final comment need be made. In the concluding pages of defense counsel's lengthy brief the following language appears: "In the case at bar, television was on trial ... and the trial was on television." Such was simply not the case. While the proceedings were televised (and much covered by the media, generally), television was not on trial; Ronny Zamora was on trial. Zamora was on trial for the senseless slaying of an elderly woman. His defense was not guilty by reason of insanity induced by "involuntary subliminal television intoxication" and a jury, failing to accept that defense, found Zamora guilty on all charges. The proceedings below in no way represented a forum for the discussion of the relative pros and cons of the television media. Stated simply, this was a murder trial, and it is to the trial judge's credit that he confined the testimony and evidence to the relevant issues. Anyone failing to comprehend the true nature and purpose of these proceedings suffers from a total misconception of our criminal justice system.
The judgment and sentences appealed are affirmed.