689 So.2d 438 (1997)
Anthony SISTO and Theresa Sisto, Appellants,
v.
AETNA CASUALTY AND SURETY COMPANY, Appellee.
No. 96-0133.
District Court of Appeal of Florida, Fourth District.
March 19, 1997.
Russell S. Adler of Karmin & Adler, Fort Lauderdale, for appellants.
Ace J. Blackburn, Jr. and Pamela R. Kittrell of Cooney, Mattson, Lance, Blackburn Richards & O'Connor, P.A., Fort Lauderdale, for appellee.
PARIENTE, Judge.
Appellants (plaintiffs), who each claimed injuries in an automobile accident, appeal from a jury verdict that awarded their past medical expenses only. We reverse for a new trial because the trial court abused its discretion by prohibiting plaintiffs' counsel from asking the panel of prospective jurors any questions about their views on damages, including noneconomic damages.[1]
Voir dire commenced with the trial court's questioning each prospective juror about his or her background. Before turning the questioning over to plaintiffs' counsel, the trial court admonished the lawyers to ask only those questions that would bear on the jurors' ability to be fair and impartial.
Plaintiffs' counsel first questioned those jurors who had indicated that they had been involved in a lawsuit, had neck or back pain, or sat on a jury. He then attempted to question all prospective jurors about whether they had seen or heard anything concerning lawsuits or verdicts in general. The trial court summarily stopped plaintiffs' counsel *439 and warned him not to ask questions about what the jurors were thinking.
Plaintiffs' counsel then informed the trial court that he would like to elicit from the jury panel whether any prospective jurors had any preconceived attitudes, opinions or beliefs concerning damage awards in general, and in particular, noneconomic damages. The trial court refused to permit any such questioning, stating that it was not going to allow counsel to "go through the entire list of what may or may not be considered in this lawsuit."
Counsel pointed out that if he could not find out a prospective juror's views on damages, and specifically non-economic damages, he would not be able to discover whether the prospective juror harbored any preconceived biases or prejudices on the subject. The trial court responded that the subject had been covered by its asking the panel members the general question of whether they would follow the court's instructions on the law. We disagree.
Unquestionably, the scope of voir dire rests in the trial court's discretion, and we will not reverse unless the trial court has clearly abused its discretion. See Vining v. State, 637 So.2d 921, 926 (Fla.), cert. denied, 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994) (citing Zamora v. State, 361 So.2d 776, 780 (Fla. 3d DCA 1978), cert. denied, 372 So.2d 472 (Fla.1979)); Allen v. Se-Go Indus., Inc., 510 So.2d 1097 (Fla. 3d DCA), review denied, 518 So.2d 1273 (Fla.1987). This discretion, however, is not unfettered. To guide the trial court in exercising its discretion, Florida Rule of Civil Procedure 1.431(b) provides that although the court may ask questions of the jurors, "the right of the parties to conduct a reasonable examination of each juror orally shall be preserved." (Emphasis supplied.)
In this case, the trial court did not just limit the scope of counsel's questions on the sensitive subject of non-economic damages; it completely prevented any inquiry about the jurors' views concerning personal injury lawsuits and damage awards. In so doing, the trial court interfered with the right of plaintiffs' counsel to conduct a reasonable examination and prevented any meaningful voir dire examination on the subject of damages.
Without the opportunity to ask even a threshold question on the subject, counsel for plaintiffs was unable to explore whether any given juror possessed a strong preconceived feeling or bias concerning personal injury lawsuits and the award of noneconomic damages such as pain and suffering. If inquiry had been permitted and a prospective juror had expressed a definite bias against awarding intangible damages, plaintiffs would have had a basis for requesting that the prospective juror be excused for cause, depending on the exact questions asked and answers given. See Goldenberg v. Regional Import & Export Trucking Co., 674 So.2d 761 (Fla. 4th DCA 1996); cf. Fazzolari v. City of West Palm Beach, 608 So.2d 927 (Fla. 4th DCA 1992), review denied, 620 So.2d 760 (Fla.1993). At the very least, plaintiffs would have had the opportunity to explore the depth of the bias or the basis for the attitude in order to make a determination whether to exercise a peremptory or for cause challenge. See Skiles v. Ryder Truck Lines, Inc., 267 So.2d 379 (Fla. 2d DCA 1972), cert. denied, 275 So.2d 253 (Fla.1973).
We distinguish the case of Smith v. Portante, 212 So.2d 298 (Fla.1968), relied on by defendant. Smith involved the constitutionality of a state statute which authorized county commissioners to mail jury questionnaires containing "essential information." The supreme court found that the statute unconstitutionally delegated authority without providing any objective guidelines or standards to follow in formulating appropriate questions. Id. at 299. In dicta, the supreme court noted that:
such an uncircumscribed questionnaire as here contemplated could cover the widest ranges of inquiries unconnected with the traditional voir dire questioning or statutory requisites relating to qualifications of jurors, e.g., such questions might inquire into the prospective juror's political, religious, social and economic views, his marital status, his arrest or conviction record, his financial condition, his educational background, his addiction to alcohol or narcotics, *440 his views on race relations, his views on allowance of damages in certain cases, or his general conduct or habit.
Id. at 300 (emphasis supplied).
Subsequent to Smith, the supreme court adopted rule 1.431(a), which vested in the circuit courts the authority to furnish each prospective juror with a questionnaire in the form approved by the supreme court. The questionnaire is intended as a timesaving measure to assist in determining whether a juror is qualified to serve. It does not assist the lawyers in determining whether a juror could be fair and impartial in the particular case being tried. This is the function of the voir dire examination, governed by rule 1.431(b). A reasonable voir dire examination assists the parties in determining whether a particular juror should be the subject of either a challenge for cause or a peremptory challenge. See Loftin v. Wilson, 67 So.2d 185 (Fla.1953).
The supreme court never held in Smith that each of the listed areas would be deemed improper subjects for questioning of individual panel members irrespective of the nature of the case. For example, while a prospective juror's views on race relations would not be an appropriate subject for inquiry in all cases, it certainly might be appropriate to elicit a prospective juror's views on race relations in the trial of a civil rights case.
In recent years, the subject of non-economic damages has received widespread media attention. It is a subject on which an individual may possess a strong bias or prejudice. In a personal injury case where the issues of permanent injury and past and future non-economic damages are hotly contested, allowing counsel to inquire about an individual's views on the sensitive area of non-economic damages is essential to a party's right to conduct a reasonable examination. Our court has implicitly recognized that a prospective juror's attitude about personal injury lawsuits is an appropriate subject for inquiry. See Fazzolari, 608 So.2d at 927-28.
Both liability and damages were hotly contested in this personal injury case. It is ironic that while the trial court admonished the parties to limit their questions to those that would touch on the prospective jurors' ability to be fair and impartial, it then prevented questions that would have assisted both the trial court and the parties in making this determination.
The jury decided liability favorably to plaintiffs but awarded economic damages only. The fact that the jury limited its award to economic damages establishes demonstrable prejudice as a result of the trial court's refusal to permit any inquiry of the prospective jurors concerning their views on damages. See Zamora, 361 So.2d at 780. The prejudice was not cured by the trial court's asking the jurors the general, generic question of whether they would follow the law.
REVERSED AND REMANDED FOR A NEW TRIAL.
GLICKSTEIN and STEVENSON, JJ., concur.
NOTES
[1] We do not reach the other issues raised except to note that both parties agree that the trial court should not have set off from the judgment the amount of PIP benefits paid for lost wages because plaintiffs neither sought nor recovered damages for lost wages.