422 So.2d 325 (1982)
Ronny Albert ZAMORA, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-685.
District Court of Appeal of Florida, Third District.
September 28, 1982.
Rehearing Denied December 13, 1982.
*326 Ronald S. Guralnick, Greene & Cooper and Sharon Wolfe, Miami, for appellant.
Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
NESBITT, Judge.
This is an appeal from an order denying a motion to vacate a judgment and conviction on the ground of ineffective assistance of counsel, following a full evidentiary hearing pursuant to Florida Rule of Criminal Procedure 3.850.
The defendant's judgment and conviction for first degree murder, burglary of a dwelling, and possession of a firearm while committing a felony and robbery was affirmed here. Zamora v. State, 361 So.2d 776 (Fla. 3d DCA 1978), cert. denied, 372 So.2d 472 (Fla. 1979). Shortly after that appeal was disposed of, Zamora filed the present motion.

The Background
Ronny Zamora was fifteen years old when he entered a neighbor's home and found the gun with which he shot and killed the elderly female resident. He also stole $400 in cash, some jewelry, and the victim's automobile. He then assembled some friends and together they had a soiree at Disney World. After the trip, Zamora's involvement in the crime became known to his parents. His father called a friend, who was a police officer. This off-duty officer obtained Zamora's confession without first affording him his Miranda rights. After he was taken into custody, Zamora gave two more confessions to the police. In addition, he made an unsolicited and totally voluntary confession in a letter to his defense counsel's daughter, stating:
I think that you desire to know what really happened. The reason I went into her house was because I thought I heard someone inside. I don't care what the police, news or people say, I did not mean to kill her. I want you to believe me and to have faith. Please don't listen to what anyone says. The other kid took all her stuff, rings, watches and everything. *327 When I shot her, I did not realize what I had done until after.
Zamora also made certain statements to a companion named Cahill with whom he had taken the Disney World trip. These statements can briefly be characterized as inculpatory of all of the crimes with which Zamora was subsequently charged and convicted except as to the murder charge, with regard to which they were exculpatory.
His allegations of ineffective assistance of counsel were specifically stated, as is required, Knight v. State, 394 So.2d 997, 1001 (Fla. 1981), and are disposed of separately.

Failure of Defense Counsel to Inaugurate Plea Negotiations
Zamora's detention and indictment were widely followed by the media and the case readily became a cause celebre. The state attorney publicly announced he would seek the death penalty. In this hapless position, Zamora's defense counsel did not inaugurate an attempt to plea bargain. There was evidence before the trial court that the assistant state attorneys directly responsible for Zamora's prosecution would have been willing to consider a plea to second degree murder in lieu of proceeding to trial on the first degree murder charge. The flaw in this argument is simply that the assistant state attorneys were never shown to have any authorization whatsoever to conclude such a negotiation. Furthermore, even after a plea negotiation has been agreed upon, it must still be ratified by the court. This powerful case, magnified by media attention and public clamor and the state attorney's announced intention to seek the death penalty, makes it entirely too imponderable to consider whether plea negotiations would have been fruitful.

Television Cameras in the Courtroom
During Zamora's trial, television cameras were present in the courtroom constantly under the general authorization of the Florida Supreme Court. Because Zamora has made no specific claim of prejudice arising from the use of the cameras and because the use of television cameras during the course of a criminal proceeding is not per se unconstitutional, Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); In re Petition of Post-Newsweek Stations Florida, Inc., 370 So.2d 764 (Fla. 1979), the contention that defense counsel should have objected to the presence of the cameras is without merit.

Failure to Suppress Police Confessions
Trial counsel did not seek to suppress any of the confessions made by Zamora. The trial court found that the police confessions were arguably suppressible, but that the letter confession and the admissions to Cahill were admissible. The trial court also found that the admissible statements along with the other evidence against Zamora were sufficient, without consideration of the police confessions, to lead to a guilty verdict. Suppression of the police confessions would only have required the state to alter its strategy and utilize the alternative, formidable evidence against Zamora. Given the letter confession, which unmistakably pointed to the defendant as the murderer, and the "Cahill" admissions, which unmistakably connected him to the remainder of the offenses charged, the trial court ruled, and we entirely agree, that although the police confessions might have been suppressed, the failure to do so in this case was not such deficient conduct as likely affected the outcome of the proceedings. Knight v. State, supra.

Failure to Seek Dismissal of the Indictment
Zamora's co-defendant, Darrell Agrella, sought and obtained dismissal of the indictment returned against him on the basis that the grand jury was illegally constituted. Although Zamora was indicted by the same grand jury, defense counsel failed to seek dismissal of Zamora's indictment or to join in Agrella's motion. However, given our above-stated concurrence in the trial court's assessment of the evidence against Zamora, we think it rather evident that even had dismissal of the indictment been *328 obtained, any subsequent, properly-constituted grand jury would surely have re-indicted Zamora. Therefore, it cannot be successfully argued that the failure to seek dismissal of the indictment was an error which would ultimately affect the outcome of the proceedings. Knight v. State, supra.

The Use of a "Non-defense"
Faced with the existence of a great deal of incriminating evidence, even if some of it were suppressed, and presented with the state attorney's apparent foreclosure of any plea bargaining possibilities, defense counsel elected to have Zamora plead not guilty by reason of insanity. He embarked on this approach buttressed by the fact that about a week before the commission of the crime, Zamora had displayed some psychiatric disorder upon being examined at his school. Defense counsel put forth that Zamora did not know right from wrong due to "voluntary subliminal television intoxication." The psychiatrist's testimony that Zamora was legally insane by the required test[1] for some two to three seconds during the commission of the homicide, was sufficient to permit the issue of insanity to go to the jury. This, in turn, enabled defense counsel to expose the jury to all of the violent contemporary television crime programs in order to attempt to demonstrate the pervasive and deleterious effect such shows might have on a fifteen-year-old.
Zamora, on this appeal, has reserved his most vitriolic assault on his former counsel for use of this "non-defense." He argues that since "voluntary subliminal television intoxication" is not recognized in Florida as a defense to the commission of a crime, the decision to utilize such a theory falls below the ability of competent counsel. However, Zamora overlooks the fact that the defense was insanity and television intoxication merely the alleged reason therefor. Just because a proffered expert witness for the defense was not prepared to testify that watching violent television programs to excess affects an individual to the extent that he might not be able to distinguish right from wrong, Zamora v. State, 361 So.2d at 779, does not mean that the jury would not believe that such a phenomenon was possible.
Moreover, it was conceded at oral argument before the bar of this court that defense counsel faced the representation of a client who had no defense. In this uncompromising position, defense counsel cannot be faulted for selecting a tack which, by allowing for the presentation of evidence as to the defendant's unfortunate background, may have at least evoked the sympathy of the jury and a consequent jury pardon, if nothing better. Under the circumstances of this case, Ford v. State, 407 So.2d 907 (Fla. 1981); Knight v. State, supra, we cannot say that because defense counsel did not succeed in his efforts he was ineffective.

The Sum of the Parts
Finally, Zamora argues that the aggregate of all the foregoing contentions entitles him to a new trial with different counsel. Although, as has been previously noted, the claim of ineffective assistance of counsel must be set out with specificity, Knight v. State, supra, our supreme court has intimated that the allegations may be considered in series or in combination. King v. State, 407 So.2d 904 (Fla. 1981). Such an inquiry in the instant case does not warrant a finding of ineffectiveness. In fact, certain of the alleged erroneous tactical decisions provide justification for others, and when considered in conjunction are actually supportive of a determination of effectiveness. For example, the non-pursuit of the motions to suppress was based on a decision to employ the insanity defense and demonstrate that only someone intoxicated with television violence and crime-dramas would confess so freely to so many people his participation in a real-life criminal episode.
Zamora's claim, whether viewed in its individual segments, in different series, or as one entire picture, does not project an image of ineffectiveness.
*329 For the foregoing reasons, we affirm the trial court's order denying the motion to vacate Zamora's judgment and conviction.
NOTES
[1] See the discussion in Zamora v. State, 361 So.2d at 779, 780-81.