Ronny ZAMORA, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Florida Dept. of Corrections, Defendant.

No. 84–1895–CIV–EPS.

United States District Court, S.D. Florida, Miami Division.

April 28, 1986.

Ronald Guralnick, Miami, Fla., for petitioner.

Calvin Fox, Asst. Atty. Gen., Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING AND AFFIRMING THE MAGISTRATE'S SECOND REPORT AND FINAL JUDGMENT

SPELLMAN, District Judge.

### I

This CAUSE comes before the Court on the Petitioner's Objections to the Magistrate's Second Report on the Petition for Habeas Corpus Relief.

This case arose from the brutal slaying of an elderly woman. On the evening of June 4, 1977, Ronny Zamora, a fifteen year old boy, needed some spending money and remembered that his elderly neighbor, a widow, was in the habit of leaving her door open. Zamora and a friend entered Mrs. Elinor Haggart's home and found money in her closet and a revolver in a drawer.

When Mrs. Haggart arrived home, she recognized the child and called him by name. The boys held her at gun point for over an hour. When she begged the children to allow her to see photographs of her late husband, they complied. Ultimately, Zamora muffled the gun with a pillow case and shot her. They took some cash, some personal belongings, and fled in her car to Disneyworld.

The Defendant was charged by indictment. He was convicted of first degree murder, burglary of a dwelling, possession of a firearm while committing a felony, and a robbery, entered on October 6, 1977, after a jury trial in Case No. 77–25123A in the Circuit Court of the Eleventh Judicial Circuit of Florida at Dade County.

Ronny Zamora filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 attacking this conviction. The Cause was referred to the Honorable Charlene H. Sorrentino, the United States Magistrate, for preliminary consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The United States Magistrate recommended that the Petition for Writ of Habeas Corpus be Denied. Thereafter, the Petitioner, represented by counsel, filed written Objections to this Report with the Court. This Court has reviewed the Second Report of the United States Magistrate, the Petitioner's Objections, and the file in the above-captioned Cause and finds the Magistrate's Recommendations to be thorough and correct.

### II

In his Petition, Zamora contended that he was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel and provides five specific

instances in which the attorney, Ellis Rubin, acted in such a way as to deprive the Petitioner of a fair trial:

1. Counsel failed to file a Motion to Suppress the confessions and admissions of Zamora;

2. Counsel raised a sole defense of insanity by reason of television intoxication even after the trial judge warned him that no such defense exists under the law. Further, counsel failed to support this defense and then ultimately sabotaged it by advising the jury that the Defendant did know right from wrong.

3. Counsel failed to negotiate a plea bargain to a lesser offense as did the co-defendant.

4. Counsel offered no defense to the other counts of the indictment and left the Petitioner defenseless.

5. Counsel had a conflict of interest because he was more interested in the publicity surrounding his case than in the fate of his client.

In an extensive and most detailed Report, the Magistrate explored and rejected each of these five contentions. She concluded that the Petitioner failed to make the showing of ineffective assistance of counsel as required by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and recommended that the Petition be denied.

The Petitioner then proceeded to file his Objections to the Magistrate's Report and in his memorandum presented the central argument that the trial counsel's performance was so deficient that it prejudiced the defense so as to deprive the Defendant of a fair trial. To bolster his position, the Petitioner essentially reiterated his five attacks, but re-framed them within what he perceived to be his overall and most persuasive argument—that the trial counsel labored under a conflict of interest which corrupted the entire defense.

■ This Court agrees with the Magistrate's findings that there was no such conflict of interest that deprived this Peti-

tioner of effective assistance of counsel. Furthermore, this Court finds that the Magistrate correctly applied the test defined in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the landmark case on conflict of interest. In *Cuyler*, the Court held as follows:

> [T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyers performance.

*Id.* at 350, 100 S.Ct. at 1719. *See also Ruffin v. Kemp*, 767 F.2d 748 (11th Cir. 1985). The *Sullivan* test has also been applied to situations analagous to the one in the instant case, where Petitioners contend that their sixth amendment right to counsel has been violated because their lawyers were more interested in publicity than in obtaining an acquittal. *See United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980).

In the instant case, the trial court determined that there was no actual conflict of interest and denied the Motion to Vacate. The record does amply support this determination. Beyond the fact that the book negotiations occurred a year after the trial, there is, as the Magistrate opined, "no indication that counsel failed to explore possible defenses or call available defense witnesses or otherwise neglected the defense of Zamora for his own benefit." *See* Second Report of United States Magistrate at 21.

In the context of a claim of conflict of interests, it has been said that "the evil ... is in what the advocate finds himself compelled to *refrain* from doing." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) (emphasis in original). In the matter *sub judice*, there is no showing that Ellis Rubin refrained from doing anything with respect to the defense of Ronny Zamora that would render the representation of his client constitutionally deficient. This Court cannot help but note the discerning remark in the

Report: "Even had it been established that Rubin was, at the time of the trial, interested in present or future publicity or publication, Rubin's own reputation would certainly be more enhanced by a successful defense of so serious a case rather than by its loss." *See* Second Report of the United States Magistrate at 21. In sum, this Court does not find an actual conflict of interest adversely affecting the lawyer's performance.

### III

The Petitioner raised the four remaining points of attack in his Objections, only this time they are offered to demonstrate that there was a conflict of interest that was injurious to the defense of this case. This Court will address each of these briefly.

First, the Petitioner contends that counsel's failure to file a Motion to Suppress the confessions and admissions of Zamora and his co-defendant, as well as evidence derived therefrom constituted a denial of his right to effective assistance of counsel. The trial court explored this issue in an evidentiary hearing on Zamora's Motion to Vacate pursuant to Fla.R.Crim.P. 3.850.

Whether effective assistance of counsel has been afforded is a mixed question of law and fact. *King v. Strickland,* 714 F.2d 1481, 1485 (11th Cir.1983). The historical or primary facts found by the state court are entitled to a presumption of correctness in a 28 U.S.C. § 2254 proceeding in federal court. *Id.* It is, of course, incumbent upon the federal court to independently determine and apply constitutional standards. The trial court found that three confessions, two at the police station and one at Zamora's home, were vulnerable to an attack for the violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court, however, could not find a legal basis upon which to seek the suppression of Zamora's letter to a friend or his confessions to another friend. The letter alone, the court opined, was sufficient to defeat the Petitioner's claim that counsel's pursuit of a Motion to Suppress would likely have changed the outcome of his trial. The statements simply would have rendered a Motion to Suppress an effort in futility. In sum, the Magistrate did correctly find that the Petitioner has not shown that the failure to pursue the Motion prejudiced the defense so as to deprive Zamora of his fair trial.

Second, the Petitioner alleged and raised again in his Objections his contention that the trial attorney "made a mockery of his insanity defense" by pressing this "non-defense" of "television intoxication" after the judge warned him that no such defense exists under the law. Further, the Petitioner contended that counsel failed to support his novel theory with evidence and then ultimately "sabotaged the insanity defense" by advising the jury that the Defendant did know right from wrong.

This assault on his former attorney for use of a "non-defense" was presented to the court on the Motion to Vacate. In denying the Motion to Vacate, the court acknowledged the fact that any lawyer attempting to defend Ronny Zamora was facing an immense amount of incriminating evidence. Further, it was conceded at oral argument before the Florida Third District Court of Appeal that "defense counsel faced the representation of a client who had no defense." *Zamora v. State,* 422 So.2d 325, 328 (Fla. 3rd DCA 1982).

This Court finds that it cannot accept the Petitioner's characterization of the defense in this case as ineffective. This Court believes that the appellate court's response to this argument and the Magistrate's Report more accurately capture the true state of affairs. The defense was insanity and the attorney sought to buttress this defense by portraying the effect of involuntary subliminal television intoxication. *See id* and Second Report of United States Magistrate at 11-12. Moreover, counsel selected an approach which permitted him to present the evidence as to the Defendant's unfortunate background. In the absence of other viable alternatives, this may have evoked the sympathy of the jury and resulted in a jury pardon. Under these circumstances, the

state court was not and this Court *is* not prepared to say that because the counsel's efforts did not pan out, he was ineffective.

Likewise, this Court can not agree with the Petitioner's view that trial counsel undercut the defense by admitting to the jury that Zamora knew right from wrong. The Magistrate correctly perceived the statement to be "quoted out of context." *See* Second Report of United States Magistrate at 18. Ellis Rubin only argued the evidence in the case and this Court does not find his approach to be an unreasonable one, or even inconsistent with respect to his overall defense strategy. In sum, there is no showing in this regard that counsel's performance was constitutionally deficient.

■ The third issue of this Petition is the claim that counsel failed to plea bargain because he desired publicity. The Petitioner insists that the prosecutor would have offered Zamora the same plea to second degree murder as his co-defendant bargained for. In denying the Motion to Vacate the Judgment and Conviction, the trial court held that success upon this issue required Zamora to establish that he would have accepted such a plea, that the State would have accepted such a plea, and that the Court would have accepted such a plea. The Florida Third District Court of Appeal affirmed the trial court on this question and commented on the Petitioner's argument that counsel's failure to inaugurate an attempt to plea bargain was sufficient to establish ineffective assistance of counsel:

> The flaw in this argument is simply that the assistant state attorneys were never shown to have any authorization whatsoever to conclude such a negotiation. Furthermore, even after a plea negotiation has been agreed upon, it must still be ratified by the court. This powerful case, magnified by media attention and public clamor and the state attorney's announced intention to seek the death penalty, makes it entirely too imponderable to consider whether plea negotiations would have been fruitful.

*Zamora v. State,* 422 So.2d 325, 327 (Fla. 3rd DCA 1982). Upon review, this Court finds its reasoning to comport with that of the state appellate court and the Magistrate, and thus, finds no constitutional infirmity.

It is worth noting, however, that insufficiency of counsel is not a conclusion derived from twenty-twenty hindsight. Nor should it originate from some vision of things that might have been. Undeniably we can look back from some superior vantage point and see an entirely different scenario. *If* Ronny Zamora had accepted a plea to a lesser offense, and *if* the state had accepted the plea, and *if* the court had also accepted such a plea, there might have been a lighter sentence and the Defendant, like his cohort, might already have been released from custody. Nothing of the sort has taken place. And the fact that not one of these contingencies has actualized does not mean that the trial strategies that *were* chosen at the time were indeed defective or even unreasonable. Ellis Rubin undertook the defense of a youth charged with horrible crimes. He faced a diligent prosecution team, a hostile media, and an outraged community. He was armed with the prospect of an insanity defense, confessions with conflicting facts, a client of tender years, and the tale of an unhappy background. Under these facts and circumstances, this Court is not prepared to say that this lawyer's election to try to evoke the sympathy of the jury and to obtain a jury pardon constitutes a fatal defect.

The fourth issue presented in the Petition itself and intermittently raised in the Objections overlaps with the second question, discussed above. The Petitioner claimed that the trial counsel offered no defense to the other counts of the indictment. In denying the state Motion to Vacate, the court correctly noted that there were no other defenses to the remaining crimes and the sole avenue available was simply putting the state to its proof. So far, the Petitioner in his attack on the Judgment and Conviction in the state court and in his memoranda and Objections filed

444

in support of this Petition has not suggested a possible defense, other than the one pursued by Ellis Rubin, the defense of insanity. This Court sees this situation as a rather bleak, but not uncommon one: a lawyer faced with the task of representing a "client with no defense." *Zamora v. State*, 422 So.2d 325, 328 (Fla. 3rd DCA 1982).

## IV

In the Petitioner's Objections to the Magistrate's Second Report, the Petitioner proffers to this Court several statements by respected legal authorities, who at the state 3.850 Hearing, were highly critical of the Zamora trial. This Court has noted Judge Joseph Durant's remark that the "entire trial was a travesty and a farce," as well as Bennet Brummer's, Public Defender for Dade County's, description of the trial as a "classic example of a mockery and a farce."

In affirming and adopting the Magistrate's Recommendation that the Petition for Writ of Habeas Corpus be Denied, this Court need not applaud Ellis Rubin for his tactical decisions or even put a stamp of approval on his approach to this trial. The standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) require none of this. Instead, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id* at 686, 104 S.Ct. at 2064. The acts or omissions complained of by the Petitioner herein were not outside the wide range of professionally competent assistance.

## V

In conclusion, it is hereby,

ORDERED AND ADJUDGED that the Second Report of the United States Magistrate is Adopted and Affirmed in all respects. No showing have been made that Ronny Albert Zamora is in custody in violation of the Constitution of the United States, the Petition for Writ of Habeas Corpus is DENIED.