Ronny A. ZAMORA,
Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary,
Florida Dept. of Corrections,
Respondent–Appellee.

No. 86–5365.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1987.

Ronald S. Guralnick, Miami, Fla., for petitioner-appellant.

Calvin L. Fox, Ralph Barreira, Asst. Attys. Gen., Miami, Fla., for respondent-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

JOHNSON, Circuit Judge:

This case involves an appeal from the district court's denial of Appellant's petition for a writ of habeas corpus. We affirm.

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

## I.

In September 1977, fifteen-year-old Ronny Zamora was placed on trial for first degree murder, burglary, robbery, and possession of a firearm in connection with the slaying of his elderly neighbor, Elinor Haggart. At trial, Zamora raised an insanity defense. His trial counsel, Ellis Rubin, argued that Zamora's insanity had been caused by "television intoxication." This defense was unsuccessful, and Zamora was convicted on all counts. He received concurrent sentences of life imprisonment for murder, twenty-five years each for burglary and robbery, and three years for possession of a firearm. The Florida District Court of Appeal affirmed the conviction. *Zamora v. State*, 361 So.2d 776 (Fla.App.1978). The Florida Supreme Court denied certiorari. *Zamora v. State*, 372 So.2d 472 (Fla.1979).

On February 1, 1980, Zamora filed a motion to vacate the judgment under Fla.R. Crim.P. 3.850, claiming that he had received ineffective assistance of counsel at trial. After an evidentiary hearing at which Zamora was represented by his present counsel, Ronald Guralnick, the state trial court denied relief. This judgment was affirmed by the Florida District Court of Appeal. *Zamora v. State*, 422 So.2d 325 (Fla.App.1982).

In August 1984, Zamora filed the present petition for a writ of habeas corpus under 28 U.S.C.A. § 2254. On April 29, 1986, the United States District Court for the Southern District of Florida denied the petition in a memorandum opinion adopting and affirming a magistrate's report which held that Zamora had not received ineffective assistance of counsel. *Zamora v. Wainwright*, 637 F.Supp. 439 (S.D.Fla.1986). This appeal followed.

## II.

Zamora contends that his trial counsel was ineffective on five separate grounds. First, he argues that Attorney Rubin failed to file a motion to suppress the defendant's confessions. Second, Zamora states that Rubin "made a mockery" of Zamora's insanity defense by alleging that the defendant's insanity resulted from "television intoxication." Third, Zamora asserts that counsel offered no defense to any count in the indictment other than the murder count. Fourth, Zamora complains that Rubin failed to plea bargain. Finally, Zamora claims that his attorney had a conflict of interest with Zamora because Rubin had more interest in publicity generated by the case than he had in the fate of his client.

■ The proper standard for measuring attorney performance is "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In general, judicial scrutiny of an attorney's performance is highly deferential. *Id.* at 689, 104 S.Ct. at 2065. This court will not second-guess strategic decisions, *id.*; rather, we evaluate the reasonableness of an attorney's conduct in light of all the circumstances as they existed at the time of the conduct. *Id.* at 690, 104 S.Ct. at 2066.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* To overcome this presumption of effective assistance, a defendant must demonstrate (1) that counsel committed serious mistakes, *and* (2) that the deficient representation prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. Prejudice requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* If a defendant does not satisfy both prongs of the *Strickland v. Washington* standard, he will not succeed on an ineffective assistance claim.[1]

■ Regarding the first ground for his ineffectiveness claim, Zamora argues that counsel should have moved to suppress his confessions to the police, at least some of which were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the eviden-

---

1. Whether effective assistance has been rendered is a mixed question of fact and law. *See* *Strickland v. Washington*, 466 U.S. at 698, 104 S.Ct. at 2070.

tiary hearing on the Fla.R.Crim.P. 3.850 motion to vacate in the state trial court, counsel testified that he and his associates decided not to seek to suppress the confessions because Zamora had made other inculpatory statements to friends which were just as damaging as the police confessions. Assuming, arguendo, that the failure to suppress the police confessions was not a reasonable tactical decision, but was a serious error, this decision did not prejudice Zamora. To demonstrate prejudice, a defendant must show that, but for the errors, there is a reasonable probability that the jury would have had a reasonable doubt regarding his guilt. *Strickland v. Washington,* 466 U.S. at 695, 104 S.Ct. at 2068. A reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. In this case, the state had abundant evidence (including other confessions) at its disposal with which to obtain a conviction. For example, Zamora had written a letter to a friend acknowledging that he had killed the victim. The state also had the testimony of another friend to whom Zamora had confessed his involvement in the burglary and robbery of the victim. Additionally, friends saw the defendant in possession of the victim's car and gun and $400 he stole from the victim's house. In short, there was overwhelming evidence of Zamora's guilt. Consequently, he was not prejudiced by the failure of counsel to suppress the police confessions.

■ Zamora's second claim of ineffective assistance is more difficult to categorize. Zamora argues that Rubin made a mockery of his insanity defense by alleging that *it* was caused by "television intoxication" even though the cause of insanity is irrelevant to the defense itself. In addition, Zamora claims that Rubin failed to support the defense with any evidence, that trial counsel was unprepared, and that Rubin "sabotaged" the defense by telling the jury

that the defendant knew the difference between right and wrong at the time of the commission of the crime.

A partial response to this set of contentions is that Rubin's tactical decision to employ an insanity defense may not have been successful in retrospect, but *Strickland v. Washington* allows trial counsel great latitude to conduct a defense. 466 U.S. at 689, 104 S.Ct. at 2065. *See also Palmes v. Wainwright,* 725 F.2d 1511, 1523 (11th Cir.) (attorneys have many legal tools for use in their discretion), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed. 2d 156 (1984). Moreover, Rubin's attempt to explain Zamora's alleged insanity by claiming it was caused by subliminal "television intoxication" does not render his assistance ineffective.

On the issue of preparation for trial, Rubin testified at the 3.850 hearing that he read many studies linking violence to television viewing. He also interviewed many psychologists regarding television violence, but he was unsuccessful in attempting to introduce their testimony. The evidence suggests that counsel was prepared and that he attempted to develop a defense in a weak case. In addition, the magistrate and district court determined that by focusing on television violence Rubin was able to introduce evidence of Zamora's unfortunate background, to the defendant's advantage.

■ The district court also adopted the magistrate's finding that Rubin did not "sabotage" Zamora's insanity defense. Admittedly, Rubin stated that the defendant knew right from wrong, but the comment was made in a larger context.[2] The district court correctly stated that Rubin could argue only the evidence and no doctor had testified that Zamora was insane except for Dr. Michael Gilbert, a psychiatrist who asserted that Zamora was insane only at the instant of the shooting. Therefore, it was consistent with Rubin's strate-

---

**2.** Rubin stated: "Of course, Ronny knew right from wrong, but I don't think that any doctor has told you that he wasn't a sociopathic personality who could not refrain from doing wrong, and he didn't care whether he did wrong. And from thousands of murderers that he had seen

this was a conditioned reflex." *Zamora v. Wainwright,* No. 84–1895, Second Report of United States Magistrate at 18 (S.D.Fla. Mar. 10, 1986) (hereinafter cited as "Magistrate's Report.").

gy to argue the facts of Zamora's crime to the jury and hope for sympathy.

Even in the context of Rubin's strategy, his statement to the jury may constitute a sufficiently serious error so as to be unreasonably deficient. Nonetheless, there is not a reasonable probability that this error rendered the outcome of the trial unreliable. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson v. Wainwright,* 787 F.2d 1447, 1450 (11th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3247, 97 L.Ed.2d 751 (1987). The state presented testimony of several doctors who said that Zamora knew the difference between right and wrong and was not insane. *See, e.g.,* Trial Transcript at 1734. Moreover, even if the jury were to believe Dr. Gilbert's testimony that Zamora was insane at the moment of the actual shooting, Zamora still could have been convicted of felony murder because the brief period of insanity provided no defense to the burglary and robbery. Accordingly, any deficiency of counsel cannot be said to undermine confidence in the outcome of the trial.

Dr. Gilbert's testimony is also relevant to Zamora's third ground for claiming that Rubin was ineffective. Zamora contends that he received ineffective assistance because Rubin developed no defense to the other three crimes with which he was charged. However, after Dr. Gilbert testified that Zamora was only temporarily insane, Rubin had no possible defense to assert to the other crimes. In his brief, Zamora refers to affidavits from experienced attorneys stating that Rubin developed and conducted a poor defense.[3] However, a deficient defense does not automatically translate into ineffective assistance. Because extensive evidence of Zamora's guilt existed in the form of Zamora's ad-

missions to his friends, and because there was no significant evidence of insanity, Zamora was not prejudiced by Rubin's representation even though the defense proved unsuccessful.

Zamora's fourth ground for claiming ineffectiveness was that Rubin failed to plea bargain. However, the state did not offer Zamora a plea bargain, and counsel cannot force the state to plea bargain. Moreover, even if it could be labeled error to fail to plea bargain, Zamora's trial would not be prejudiced to the point of reaching an unreliable result because of this alleged mistake. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Zamora's final ground for asserting that his trial counsel was ineffective is intertwined with his other claims. He contends that counsel had a conflict of interest because Rubin was more concerned with publicity than he was with Zamora's fate. Zamora points to his other grounds for claiming ineffectiveness as evidence that Rubin cared more about publicity than he cared about the outcome of the trial. In a conflict of interest situation, the court will presume prejudice to the defendant if he shows that he received inadequate representation because counsel actively represented conflicting interests. *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *Porter v. Wainwright,* 805 F.2d 930, 939 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3195, 3196, 96 L.Ed.2d 682 (1987). A potential conflict is not sufficient to impugn a criminal conviction, *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719, but the standard developed in *Cuyler* has been applied to cases in which defendants argue that their lawyers were more interested in

---

3. At the evidentiary hearing on the Fla.R. Crim.P. 3.850 motion to vacate, Zamora called several expert witnesses who testified that trial counsel's performance was deficient. Many of these witnesses labeled the trial a "farce" or a "mockery." However, none of these experts testified as to what Rubin should have done to present a better defense. Thus, none of their testimony provides any support for Zamora's claim that Rubin's poor performance prejudiced his defense.

Our decision that Zamora did not receive ineffective assistance of counsel does not mean that we approve of Rubin's conduct. Like the district court, we do not applaud trial counsel's performance, *see* 637 F.Supp. at 444; nonetheless, we do not conclude that his conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2064.

publicity than in obtaining an acquittal. *See United States v. Hearst*, 638 F.2d 1190 (9th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). Nonetheless, the record supports the trial court's determination that no *actual* conflict of interest existed in the instant case.[4]

Where an attorney has conflicting interests, the concern is usually with what counsel refrains from doing to aid his client. *See Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). In the case at bar, the magistrate found no indication that Rubin failed to raise any defenses or call any available witnesses, Magistrate's Report, *supra*, at 21, and Zamora does not specify any strategies that Rubin should have adopted. Moreover, the magistrate made the astute comment that, even if it had been established that Rubin was interested in publicity, his reputation would have been "more enhanced by a successful defense of so serious a case rather than by its loss." *Id.*

### III.

In conclusion, there was little that trial counsel could have done to prevail in this case. Even if certain aspects of his trial strategy are deemed unreasonable, this did not prejudice Zamora because of the overwhelming evidence against him. Zamora admitted his culpability in a letter to one friend and made various admissions to at least one other friend. Several witnesses saw him in the victim's car with $400 and the victim's gun. In addition, he had no evidence of his insanity other than the testimony of Dr. Gilbert who stated that Zamora was insane for a few moments when he killed the victim. Moreover, this testimony was contradicted by the doctors who testified for the state. In light of all the evidence, the jury's verdict was reliable.

---

**4.** In *Hearst*, F. Lee Bailey was held to have a conflict of interest because he had contracted with a publisher during the course of the proceedings to write a book about his client, Patty Hearst, and her case. 638 F.2d at 1192. Like Bailey, Ellis Rubin contracted to write a book about his client's trial. However, Rubin did not negotiate for the book contract during the course of the proceedings. Rubin conducted negotiations one year after trial.

Accordingly, we AFFIRM the district court's denial of habeas corpus.

In addition, Zamora did not testify at trial, unlike Patty Hearst. Thus, Rubin is not susceptible to the allegation raised against Bailey that he had his client testify so that he could write about it in his book. Consequently, the book contract in this case did not constitute a conflict at the time of trial.