UNITED STATES, Appellee,

v.

Carlos RODRIGUEZ RODRIGUEZ,
Defendant, Appellant.

No. 90–1266.

United States Court of Appeals,
First Circuit.

Submitted Aug. 1, 1990.

Decided March 18, 1991.

Carlos Rodriguez Rodriguez, on brief pro se.

Daniel F. Lopez–Romo, U.S. Atty., and Juan A. Pedrosa, Asst. U.S. Atty., on brief, for appellee.

Before BREYER, Chief Judge,
CAMPBELL and CYR, Circuit Judges.

PER CURIAM.

Appellant Carlos Rodriguez Rodriguez was indicted on June 22, 1983 on six counts of bank robbery and one count of narcotics possession. After Rodriguez pleaded not guilty, a jury on April 12, 1984 found him guilty on all relevant counts of the indictment. Rodriguez was sentenced on June 29, 1984 to a total of fifty-four years in prison and $55,000 in fines.

On May 6, 1988, Rodriguez filed a motion to vacate sentence under 28 U.S.C. § 2255. In this motion Rodriguez made two claims, both charging ineffective assistance of counsel. First, Rodriguez alleged that his trial counsel, Pedro Varela, acted incompetently by insisting that Rodriguez stand trial and expose himself to a potential seventy-five year jail sentence rather than accept a government plea offer including only a potential twenty-year sentence. According to Rodriguez, Varela misled him into rejecting the plea offer by incompetently misstating and minimizing the nature and extent of the government's evidence against Rodriguez and by failing adequately to explain the potential consequences of going to trial.

Second, Rodriguez alleged that Varela's representation was rendered ineffective by an actual conflict of interest because Varela was a member of the Macheteros organization, which had advised Rodriguez to hire Varela and which, Rodriguez discovered after trial, had paid half of Varela's fee. Rodriguez asserted that this conflict had an adverse impact on Varela's representation because Varela acted to protect the interests of the Macheteros organization over Rodriguez' interests. Thus, Rodriguez alleged, for example, that Varela advised him not to cooperate with the government by fingering other members of the organization, and Varela deliberately failed to tell the government of a counter-offer proposed by Rodriguez that included an offer of limited cooperation.

On January 9, 1989, a magistrate judge issued a report and recommendation rejecting Rodriguez' claims without an evidentiary hearing. The magistrate found that Varela's urging to reject a plea agreement and to stand trial was a matter of trial tactics, and that Rodriguez was not prejudiced because even if Rodriguez had agreed to a plea bargain the district court could have refused to accept the agreement. The magistrate further found that there was no actual conflict of interest adversely affecting Varela's representation because Rodriguez had offered nothing beyond "speculation" to suggest that Varela's efforts had been compromised. With regard to Rodriguez' allegation that Varela failed to tell the government of a counter-offer, the magistrate noted that, in the government's opposition, the government's attorney alleged that he himself had received a phone call from Varela containing a counteroffer made on Rodriguez' behalf. In addition, the magistrate found "insufficient and meritless" Rodriguez' statement in support of his allegation that an "unknown" federal agent had later told him "that he could not recall anyone mentioning a cooperation counter-offer during the plea bargaining process in the original trial." Finally, the magistrate noted that, even assuming Varela was a member of the Macheteros, Rodriguez knew that when he retained Varela.

Rodriguez filed a set of objections to the magistrate's report and recommendation in which Rodriguez named the federal agent who allegedly had said he had not known of a counter-offer. Rodriguez restated his readiness to present the testimony of this agent and other named witnesses at an evidentiary hearing.

On October 8, 1989, the district court issued a six-page opinion denying Rodriguez' § 2255 motion without a hearing. The district court dismissed Rodriguez' claim of incompetence on essentially the same grounds adduced by the magistrate.

In dismissing Rodriguez' claim based on conflict of interest, the district court found that Rodriguez had not demonstrated the existence of an "actual" conflict. The court first found, "We cannot rest on defendant's allegation that counsel is a member of the Macheteros. Defendant has provided no support for his claim that counsel belongs to the Macheteros organization." Then the court found that Rodriguez had failed to demonstrate "that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests," since "[t]he statement of an unknown agent that counsel failed to inform the government of a counter-offer" was insufficient. Rodriguez appeals. We vacate the district court's denial of Rodriguez' § 2255 motion and remand the case to the district court for an evidentiary hearing.

It is well settled that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Although *Cuyler* itself involved counsel's joint representation of criminal defendants, the *Cuyler* standard has been applied generally to other conflict of interest situations. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988); *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir.1988); *Zamora v. Dugger*, 834 F.2d 956, 960–61 (11th Cir.1987); *United States v. McLain*, 823 F.2d 1457, 1463 (11th Cir.1987); *United States v. Hearst*, 638 F.2d 1190, 1193 (9th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

■ Rodriguez alleged not only that his counsel, Varela, was a member of the Macheteros, but that Rodriguez was advised to hire Varela by Rodriguez' superior in the Macheteros organization. Further, Rodriguez asserted, when after trial Rodriguez offered to pay Varela the remaining half ($10,000) of Varela's fee, Varela informed Rodriguez that that portion of his fee had been paid by the Macheteros. There can be no question that these allegations, if proven, would constitute a potential conflict of interest. The Supreme Court made this clear in *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), when it stated,

> Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.

*Id.* at 268–69, 101 S.Ct. at 1101–02. *See United States v. Allen*, 831 F.2d 1487, 1496–97 (9th Cir.1987), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988); *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir.1985) (no adverse effect on representation shown); *United States v. Bernstein*, 533 F.2d 775, 788 (2nd Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).

The district court indicated otherwise, stating, "We cannot rest on defendant's allegation that counsel is a member of the Macheteros. Defendant has provided no support for his claim that counsel belongs to the Macheteros organization." As we have said, however, Rodriguez made specific allegations that went beyond a claim of Macheteros membership, most notably the allegation that half of Varela's fee was paid by the Macheteros. Furthermore, section 2255 provides that a petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." Accordingly, "a petition can be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact.'" *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir.1990) (quoting *Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989)). Rodriguez' allegations concerning Varela's divided loyalty relate to matters outside the record of his conviction, are not inherently incredible, and are not conclusory. Rodriguez, therefore, did not need to provide any further support for this aspect of his claim—the alleged existence of a potential conflict of interest—in order to avoid dismissal without an evidentiary hearing.

■ The magistrate noted that Rodriguez admitted he knew of Varela's Macheteros membership when he retained him as counsel. However, the government does not argue, nor could it, that Rodriguez thereby somehow waived his sixth amendment right to effective assistance of counsel. For one thing, there is nothing in the record to indicate that Rodriguez knew until after trial that half of Varela's fee had been or would be paid by the Macheteros.

Furthermore, the government alleged nothing that would fulfill the requirement that a waiver of sixth amendment rights must be knowing and intelligent. *United States v. Fahey*, 769 F.2d 829, 834–35 (1st Cir.1985). Ordinarily, a knowing and intelligent waiver can occur only after adequate warning by the district court of the potential hazards posed by the conflict of interest and of the accused's right to other counsel. *See, e.g., United States v. Waldman*, 579 F.2d 649, 651 (1st Cir.1978); *United States v. Donahue*, 560 F.2d 1039 (1st Cir.1977); *United States v. Foster*, 469 F.2d 1, 4 (1st Cir.1972). It may be that similar warnings by defense counsel might also be sufficient, *see Allen, supra*, 831 F.2d at 1500–02; *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 139 (3rd Cir.1984); *United States v. Martorano*, 620 F.2d 912 n. 3 (1st Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980), especially in a case like this where there is no allegation that the district court knew of the potential conflict. However, there has been no suggestion by the government that such warnings were given to Rodriguez. Even had the government made such an allegation, that would not have permitted dismissal of the petition without a hearing to probe the factual support for the allegation.

■ In addition, under our precedent it would appear that even a knowing acceptance by defendant of counsel's representation despite a potential conflict of interest does not preclude a showing, under the standard of *Cuyler, supra*, 446 U.S. 335, 100 S.Ct. 1708, that the conflict became actual and had an adverse effect on representation. *Fahey, supra*, 769 F.2d at 835; *United States v. Sanders*, 690 F.Supp. 677, 679 (N.D.Ill.1988). *But cf. United States v. DiCarlo*, 575 F.2d 952, 957 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978) ("Particularly is there a heavy burden on a defendant when the facts were known to him from the beginning").

The core of the district court's holding was that Rodriguez failed to show that any conflict of interest was "actual" and that it "adversely affected his lawyer's performance." *Cuyler, supra*, 446 U.S. at 348, 100 S.Ct. at 1718. We find, however, that Rodriguez did raise allegations of adverse effect sufficient to merit an evidentiary hearing. We shall now examine Rodriguez' allegations of adverse effect in greater detail.

These allegations concern counsel's conduct of pretrial plea negotiations with the government. Rodriguez asserted, both in his § 2255 petition and in an affidavit, that Varela met in March 1984 with Assistant U.S. Attorney Ricardo Pesquera and Blas C. Herrero, counsel for Rodriguez' wife, who was also facing trial on similar charges. The government offered a plea agreement under which both Rodriguez and his wife would plead guilty to four of the seven counts in the indictment. They would each then face a maximum twenty years in prison, and the government would not recommend a sentence. Both Varela and Herrero agreed to recommend this agreement to their clients.

Rodriguez, however, subsequently told Varela that he did not want his wife exposed to a twenty-year sentence. Rodri-

guez proposed a counteroffer under which his wife would get a lighter sentence, but Rodriguez would cooperate with the government against his alleged co-conspirators in the bank robbery. Varela argued against this, saying the government would "squeeze him dry" of everything he knew. Rodriguez assured Varela he was offering cooperation limited to the bank robbery, and would not provide information regarding the Macheteros organization generally. Rodriguez directed Varela to communicate this counteroffer to the government.

Varela later told Rodriguez that the government had rejected the counteroffer. Varela then argued against accepting the government's original offer, arguing that acquittal was likely because the only evidence against Rodriguez consisted of fingerprints and Varela could produce expert testimony refuting the government's fingerprint evidence. Rodriguez agreed to go to trial, was convicted of all seven counts after a trial at which the government introduced much evidence against Rodriguez beyond fingerprint evidence, and was sentenced to fifty-four years.

After his incarceration, Rodriguez agreed to cooperate with federal agents against the Macheteros. When he asked one of the agents why the government had rejected his pretrial cooperation counteroffer, the agent told him he had never heard of the counteroffer.

On the basis of these allegations, Rodriguez claimed that Varela's conflict of interest caused Varela to attempt to steer Rodriguez away from any plea agreement that would involve cooperation with the government against the Macheteros organization, to which Varela owed primary loyalty. Specifically, Rodriguez alleged that Varela had failed to communicate Rodriguez' counteroffer to the government. Once Varela learned of Rodriguez' willingness to cooperate, Rodriguez alleged, Varela deliberately understated the evidence likely to be marshalled against Rodriguez at trial in order to persuade Rodriguez to go to trial. At that point, Rodriguez reasoned, Varela's best hope of protecting the Macheteros organization was to keep Rodriguez out of prison by winning his outright acquittal, however unlikely. Only acquittal would remove the threat of a deal involving Rodriguez' full cooperation.

In the government's opposition to Rodriguez' § 2255 petition, Assistant United States Attorney Ricardo Pesquera offered his own recollection of the plea bargaining in Rodriguez' case. Pesquera said that Varela did communicate a counteroffer to him. According to Pesquera, Varela told Pesquera that Rodriguez would give limited cooperation in the bank robbery case if he could plead guilty to only three counts and if the government recommended a sentence for Rodriguez not to exceed five years. Pesquera said that he rejected this counteroffer and told Varela he would accept only full cooperation, with Rodriguez revealing all that he knew about the Macheteros organization.

Rodriguez, in his response to the government's opposition, pointed out that Varela's counteroffer as described by Pesquera contained different terms than the one Rodriguez alleged he told Varela to make. Furthermore, Rodriguez asserted, Varela never told Rodriguez about this conversation with Pesquera, and specifically never told Rodriguez that the government had said it would consider a new plea offer if Rodriguez would cooperate fully.

■ We cannot agree with the district court and the government that these allegations are insufficient to merit an evidentiary hearing on the issue of whether there was an actual conflict with an adverse effect on Varela's representation. We have held that a defendant must prove two elements to establish an actual conflict of interest having an adverse effect on representation. "First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Fahey, su-*

pra, 769 F.2d at 836; *Brien v. United States*, 695 F.2d 10, 15 (1st Cir.1982).

▆▆▆ A defendant has a right to be informed by his counsel of a plea offer. Ordinarily, counsel's failure to do so constitutes ineffective assistance of counsel. *Johnson v. Duckworth*, 793 F.2d 898, 901 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3rd Cir.1982). Accordingly, the assertion by a § 2255 petitioner that counsel, on account of a conflict of interest, failed to inform the petitioner of a plea offer by the government constitutes a sufficient allegation of "adverse effect" on representation to warrant a hearing. By the same token, the assertions that defense counsel, affected by a conflict of interest, failed to communicate to the government a counteroffer put forward by the petitioner, or pushed for rejection of a government plea offer, constitute adequate allegations of "adverse effect." These allegations, if proven, certainly would show that counsel declined to pursue, due to a conflict of interest, the plausible defense strategy of seeking a favorable plea bargain through offering full cooperation with the government.

We cannot agree with the findings of the district court and the magistrate that Rodriguez' allegations "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Dziurgot, supra*, 897 F.2d at 1225. First, nothing in Rodriguez' assertions is inherently incredible. On their face they do present at least a plausible theory of an actual conflict of interest adversely affecting Varela's representation.

Furthermore, since these allegations revolve around matters outside the record, they could not be dismissed without a hearing on the ground that they are conclusively contradicted by the record. Contrary to the magistrate's finding, Assistant U.S. Attorney Pesquera's version of the facts surrounding Rodriguez' counteroffer, even if accepted as part of the record, does not conclusively contradict Rodriguez' allegations. All it does is call into question the credibility of Rodriguez' account. The resolution of such factual disputes is, of course, the primary purpose of an evidentiary hearing. In any event, Pesquera's account could be said to raise more questions than it answers in that it refers to government feelers regarding full cooperation that Rodriguez insists were never brought to his attention by Varela.

Finally, Rodriguez made his allegations in adequate detail. We cannot agree that they are conclusory or mere speculation. Although the district court and the magistrate found that the statement of an unknown agent that he had not been aware that Varela had conveyed Rodriguez' counteroffer was insufficient support for Rodriguez' claim, Rodriguez remedied any inadequacy when he named the agent in his objections to the magistrate's report. At an evidentiary hearing, presumably that agent and others could give testimony about Rodriguez' allegations. Rodriguez also stated that he would offer the testimony of his wife's attorney, Blas Herrero, to the effect that at the outset of the plea bargaining—and before the question of cooperation arose—Varela had agreed to recommend the government's initial plea offer to Rodriguez. Such testimony would be relevant to Rodriguez' assertion that later, after Rodriguez had mentioned cooperation, Varela changed course and urged Rodriguez not to accept this same plea offer. We think Rodriguez provided adequate factual specification beyond bald speculation.

▆▆▆ We conclude, therefore, that in his filings in the district court Rodriguez alleged enough to require an evidentiary hearing as to the existence of an actual conflict of interest adversely affecting Varela's representation. Of course, our holding does not in any way suggest any view of the ultimate merits of Rodriguez' claims. We merely hold that he said enough to gain an opportunity to come forward with proof at a hearing, with the assistance of appointed counsel. If, as the government suggests, Rodriguez has made somewhat inconsistent allegations in various filings, the district court, of course,

may consider that in weighing credibility at a hearing.

We add that, as we have noted above, there is authority which suggests that a failure by defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on grounds of incompetence alone, even absent any allegation of conflict of interest. *Johnson, supra,* 793 F.2d at 901–02; *Zelinsky, supra,* 689 F.2d at 438; *Barentine v. United States,* 728 F.Supp. 1241, 1243, 1251 (W.D. N.C.), *aff'd,* 908 F.2d 968 (4th Cir.1990). The same conceivably could be true of other alleged misdeeds in the course of plea bargaining, such as failing to communicate a defendant's counteroffer, dramatically understating the quality of the government's potential evidence against defendant, or failing to inform defendant of the maximum punishment he could face after trial and conviction. The parties have not adequately argued these points, either in this court or in the district court. The district court set forth no findings or conclusions on these matters. Accordingly, we direct the district court on remand, should it find that Rodriguez has not demonstrated an actual conflict of interest, to conduct an appropriate inquiry into whether any of Rodriguez' allegations of misconduct by Varela in the course of plea negotiations could constitute ineffective assistance of counsel by virtue of incompetence and, if so, whether Rodriguez can prove those allegations.[1]

However, as for Rodriguez' allegation that counsel provided ineffective assistance solely by virtue of recommending that Rodriguez go to trial, risking a seventy-five year term, rather than accept a plea agreement carrying a twenty-year sentence, we affirm the district court's denial without an

evidentiary hearing. Absent any accompanying assertions of conflict of interest, this claim merely attacks counsel's tactics in Rodriguez' defense. As the district court found, "[e]rrors, even egregious ones, in this respect do not provide a basis for postconviction relief." *United States v. Rubin,* 433 F.2d 442, 445 (5th Cir.1970), *cert. denied,* 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 (1971). Thus, while Rodriguez' allegations of specific misconduct by Varela—such as not informing Rodriguez of a plea offer or not relaying a counteroffer to the government—may require an evidentiary hearing, the mere allegation that counsel wrongly recommended to go to trial was properly dismissed.

Rodriguez' request for oral argument is *denied.*

The judgment of the district court is *vacated* and the case is remanded for further proceedings consistent with this opinion.

---

1. We note in this regard that the fact that a defendant, after rejecting a guilty plea, still receives all the constitutional protections of trial does not preclude an attack on sixth amendment grounds if counsel's performance during plea bargaining fell below "the range of competence demanded of attorneys in criminal cases," *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. *Johnson, supra,* 793 F.2d at 901–02; *Zelinsky, supra,* 689 F.2d at 438. Furthermore, the mere possiblity that the district court might

have rejected a plea agreement does not preclude Rodriguez from showing prejudice. *See Turner v. State of Tennessee,* 858 F.2d 1201, 1207 (6th Cir.1988), *vacated on other grounds,* — U.S. —, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989) ("we think it unfair and unwise to require litigants to speculate as to how a particular judge would have acted under particular circumstances"); *Zelinsky, supra,* 689 F.2d at 438 & n. 2.