**Mark HERMAN, Petitioner–Appellant,**

v.

**Robert BUTTERWORTH,
Respondent–Appellee.**

**No. 89–5575.**

United States Court of Appeals,
Eleventh Circuit.

April 25, 1991.

Joseph Mincberg, Palm Beach, Fla., for petitioner-appellant.

Joan Fowler, Asst. Atty. Gen., Palm Beach, Fla., for respondent-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and RUBIN *, Senior Circuit Judge.

CLARK, Circuit Judge:

Appellant Mark Herman appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. 744 F.Supp. 1128. In his petition, Herman alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney (1)

---

* Honorable Alvin B. Rubin, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

failed to object to the admission into evidence of a document purporting to relate the details of a confession by Herman, (2) failed to hire a document examiner, and (3) failed to conduct an adequate pre-trial investigation. Based on her conclusion that the state court rushed Herman to trial even though he was aware that Herman's attorney, Alphonso Sepe, was still recovering from heart surgery and did not feel satisfactorily prepared for trial, the magistrate found that Herman's claim of a denial of effective assistance of counsel was meritorious, and recommended granting the petition. The district court rejected the magistrate's recommendation, concluding that Herman had not been prejudiced by the admission of the purported confession. He also held that counsel's failure (1) to hire a document examiner, and (2) to investigate the case in the manner that Herman alleged was required, were reasonable trial strategy decisions and thus formed no basis for finding that Herman's counsel had been ineffective.

Herman now brings this appeal only from the district court's ruling with respect to the lack of prejudice resulting from the admission of the purported confession. We affirm.

## BACKGROUND

The record reveals the following about the events leading up to the trial of Herman. On January 16, 1976, Richard Kreusler was killed when a .12 gauge shotgun was fired through the front door of his Palm Beach, Florida residence as he walked through the foyer to answer the doorbell. In their initial investigation of the murder, the police found casings from the shotgun in Kreusler's front yard, but were unable to find any eyewitnesses to the shooting. They did find some witnesses who were in the neighborhood around the time of the shooting, and who reported seeing a loud-sounding yellow sports car in the area that was being driven in a somewhat suspicious manner. Despite an exten-

sive investigation by the police, no motive for the killing of Kreusler could be ascertained and no physical evidence could be found except the spent shotgun shells. Interrogation of many persons, including Herman, was commenced. In response to their questions, Herman told the police that he once had a .12 gauge shotgun, but had returned it to its owner, and that he would let them know if he heard anything that might be useful to their investigation of the case. Several months later, the police travelled to Phoenix, Arizona and executed a search warrant on a storage area that contained some of Herman's belongings where they found a .12 gauge shotgun. Ballistics tests were subsequently performed on the shotgun to determine whether it was the murder weapon, but the results were inconclusive. At this point, the police ended their investigation of Herman with respect to the Kreusler murder.

The police did not resume their investigation of Herman until after he was jailed in connection with an unrelated crime. The event that precipitated their renewed investigation was a report by a prison inmate, Dexter Coffin, that Herman had confessed to killing Richard Kreusler. On May 20, 1977, Herman was indicted for the crime of first degree murder. After the court granted several continuances, in part due to heart problems suffered by Herman's attorney,[1] the case was tried to a jury in February, 1978. On February 22, 1978, the jury found Herman guilty of first degree murder. Herman was subsequently sentenced to life imprisonment with a mandatory minimum of twenty-five years imprisonment.

Because the police found no physical evidence linking Herman to the crime, the prosecution's case relied solely on testimony from witnesses to whom Herman had confessed, and testimony from other witnesses that tended to corroborate the details of these confessions. The basis for Herman's ineffective assistance of counsel claim is that his attorney failed to object to

---

1. Although the magistrate based her recommendation in large part on concerns regarding the attorney's health, Herman does not argue on appeal that his attorney's ill health rendered him unable to provide effective assistance of counsel.

portions of the testimony of Dexter Coffin, the prisoner who first claimed that Herman had confessed to him. A brief explanation of the circumstances of this alleged confession is necessary.

While in the Palm Beach County jail, Herman apparently heard that Coffin, a jailhouse lawyer, was experienced at preparing the necessary filings for asserting the insanity defense. Herman approached Coffin and asked if Coffin would help him work up an insanity plea in connection with Herman's effort to obtain relief from a conviction which he had just received. Because Herman and Coffin were housed in separate cells, much of their communication was done in writing, although they did meet face-to-face on at least one occasion. A prisoner trusty, Richard Kane, delivered notes back and forth between the two men. After Coffin assisted Herman with the insanity plea and a civil lawsuit he was pursuing, Herman then allegedly wrote Coffin with respect to the case with which we are concerned.

At trial, Coffin testified that Herman wrote him two notes explaining how the murder happened. These two notes, referred to as Exhibits 47 and 48 at trial, were ruled inadmissible because the prosecution was unable to offer sufficient proof that the notes were actually written by Herman. The handwriting expert could only state that Exhibits 47 and 48 which Coffin claimed he had received from Herman, were written by the same person, but was unable to conclude with any certainty that Herman wrote them. The expert also had exemplars from Coffin and Kane, but was unable to reach a conclusion as to whether either of them had authored the documents. Coffin, having no previous familiarity with Herman's handwriting and not having seen Herman write the notes, also could not conclusively identify Herman as their author. Instead, he could only state that Kane told him that the notes came from Coffin. There was testimony from Kane that he delivered all of Herman's notes to Coffin. Thus, the documents did not go to the jury.

The substance of Exhibits 47 and 48, however, was revealed to the jury when Coffin read a note that he had written and delivered to his own attorneys summarizing the confessions in Exhibits 47 and 48. This note, referred to as Exhibit 56 at trial, was delivered by Coffin's attorneys to the police along with Exhibits 47 and 48, thus leading to the renewal of the police investigation of Herman. It also precipitated Coffin's release from jail pursuant to an agreement worked out by his attorneys with the prosecutor.

At trial, Herman's counsel made no objection to the admissability of Exhibit 56 on the grounds that the note contained hearsay by purporting to repeat the contents of Exhibits 47 and 48, the authorship of which had not been established. Coffin was then permitted to read Exhibit 56 in its entirety, thus publishing his explanation of the contents of Exhibits 47 and 48 to the jury. In Herman's state habeas corpus proceeding in which this same ineffective assistance of counsel claim was raised, the state court ruled that Exhibit 56 "was objectionable on the grounds of hearsay and ... would have or should have been excluded had such objection been made."

## DISCUSSION

To state a claim for habeas corpus relief on the grounds of ineffective assistance of counsel, the appellant must show that "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Thus, not every serious error made by counsel will support an ineffective assistance of counsel claim. To prevail on his petition for habeas corpus relief, the defendant must show that he was prejudiced by the error.

The crux of this appeal turns on whether defense counsel's performance fell below an objective standard of reasonableness when he did not object to the admission of Exhibit 56, and, if so, whether Herman was prejudiced by the error. These are questions of federal law which we review *de novo*. *Id.* at 698, 104 S.Ct. at 2070 (holding that the question of Sixth Amendment ineffectiveness of counsel is a mixed question of law and fact). We turn first to the issue of whether Herman was unconstitutionally prejudiced by the admission of Exhibit 56. The record discloses that, by and large, Attorney Sepe demonstrated skill and diligence in his handling of the defense of this extremely difficult and complex case. The issue before us, however, relates to whether he was nevertheless ineffective because he failed to object to the admission of Exhibit 56 and to references to that exhibit in the testimony. The exhibit clearly would have been inadmissible had an objection been timely made, so the crucial issue is whether Herman was unconstitutionally prejudiced by its admission of the references to it. Since we find that the failure by Attorney Sepe to object to the admission of Exhibit 56 was not prejudicial to the outcome, we do not rule on the issue of ineffectiveness.

Appellant argues that Exhibit 56 was the centerpiece of the prosecution's case and that it and Exhibits 47 and 48 were repeatedly referred to throughout the trial such that these three inadmissible documents permeated the trial and irreparably tainted the testimony of most of the witnesses. Appellant further contends that the trial court's instruction to the jury at the end of the trial that Exhibit 56 was not admitted to prove the truth of its contents, but only as the best evidence of what Coffin told his attorneys must be considered a futile effort to "unring the bell," given the repeated references to this alleged confession throughout the trial. While Coffin's reading of Exhibit 56 presented the jury with a detailed description of the prosecution's theory as to how the murder had occurred, we find that, in view of the other evidence in the record, exclusive of Exhibit 56 and the references to it there is not a reasonable probability that the outcome of the proceedings would have been different had Exhibit 56 been excluded.

In evaluating the prejudicial impact of the admission of Exhibit 56, we must consider the totality of the evidence presented at trial. *Id.* at 695, 104 S.Ct. at 2069. The prosecutor's theory of the case was that Herman had accidentally murdered Richard Kreusler when in fact he had intended to kill Billy Glocker, whose parents lived next door to Kreusler. Herman's motivation for the killing was alleged to be anger at Billy Glocker over "ripping him off" in a drug deal. In support of this theory, the prosecutor presented several witnesses whose testimony was completely unrelated to Herman's alleged confession contained in Exhibit 56. Coffin himself testified that Herman told him in a chance face-to-face meeting in the elevator at the Palm Beach County Jail that he knew that the Richard Kreusler murder was not a dead issue. When Coffin asked him, "Did you do it?", Herman responded, "Yes," while winking and grinning at Coffin. When Coffin asked "What happened?", Herman said, "Do you know Billy Glocker?" At that point the two men were separated.

Another prisoner, Arthur Baines, serving a fifteen-year sentence at the time of the trial, was Herman's cellmate in December, 1976, during the period in which Herman was alleged to have sent the written confession down the hall to Coffin's cell. Baines testified that Herman and he discussed the Kreusler murder and that Herman told him one night that "This was an accident." A third prisoner, David Wayne Gibson, also testified that Herman told him that he had killed Kreusler. Gibson further explained that he had lied to the grand jury when he testified that Coffin had forged the confessions contained in Exhibit 47 and 48. This was also corroborated by Baines' testimony about a letter that Gibson had written to Herman's lawyer which stated that Coffin had forged Herman's confession. Baines showed Gibson's letter to Herman to see if it was correct. Herman made some changes in the letter, and

Baines delivered it back to Gibson in the jail.

A fourth prisoner, Gerard Denono, testified that he and Herman shared a cell for a number of months beginning in late January, 1977. By that time, Coffin had already been released from the jail. At trial, Denono gave detailed testimony about conversations he had with Herman over an extended period of time during which Herman told him that he had killed Kreusler. Herman explained to Denono that he committed the murder on a night when he was upset after having a fight with his wife. He and a friend drove to a gas station and then to the Kreusler neighborhood, where he shot three times into the door of the Kreusler home with a .12 gauge shotgun. He explained that he had been driving his friend's Corvette, and that he had intended to shoot Billy Glocker because he had "ripped him off" in a drug deal, but had accidentally shot into the wrong house. Herman told Denono that the person who was with him that night later died in a car wreck. He also stated to Denono at one point that the police should stop looking for the murder weapon, because they already had it in their possession, while at other times he stated that he had "deep-sixed" the weapon. The prosecutor elicited from Denono that he had not had any discussions about this case with Coffin, Gibson, Baines, or anyone else who had any connection with the facts of the case.

Denono also testified that Herman told him that his case paralleled Denono's because both involved a confession, and asked Denono if a confession was valid if it was not signed. Herman told him that he had written a confession and given it to Kane, who had in turn delivered it to Coffin. Herman related to Denono his concern about his alibi, worrying whether he had bought gas in Palm Beach with a credit card the night of the murder.

Testimony from several other witnesses also corroborated the state's theory of the case. Witness Debra Altman testified that she overheard Herman tell Steve Masiello that Billy Glocker owed Herman money for drugs. Witness Frank Laiser testified that his deceased brother, Steven Laiser, was a friend of Herman, had owned a Corvette before his death in an auto accident, and lived in Palm Beach.[2] Witnesses, who had been in the neighborhood around the time of the shooting, testified that they had seen two men in a sports car driving suspiciously about the time of the murder.

Based on this evidence, we find that Herman has failed to show a reasonable probability that, but for the admission of Exhibit 56 and the references to it the outcome of the trial would have been different. *See Harrison v. Jones*, 880 F.2d 1279 (11th Cir.1989) (holding that prejudicial impact of improper introduction of prior conviction to impeach defendant's credibility was not sufficient to undermine confidence in the outcome of the trial when evidence of three other convictions was properly admitted and defendant's version of the facts was highly unlikely, even if his credibility had not been questioned); *Zamora v. Dugger*, 834 F.2d 956 (11th Cir.1987) (holding that counsel's failure to move to suppress defendant's confession to police was not prejudicial when evidence of defendant's written and oral confessions to two friends and testimony from witnesses who saw defendant in possession of the victim's car, gun, and $400 cash established defendant's guilt for murder beyond a reasonable doubt). While Exhibit 56 contained statements that corroborated the testimony of the other witnesses, and thus strengthened the prosecution's case, its admission did not have a prejudicial impact sufficient to undermine confidence in the jury's verdict. As a result, we find that Attorney Sepe's failure to object to the admission of this evidence did not constitute ineffective assistance of counsel.

Herman's arguments seem to suggest, however, that because the most damaging evidence presented against him came from prisoners of dubious character and credibil-

---

**2.** Because Palm Beach is an island community, and because soon after the murder the police had closed off exits from the island, the prosecutor's theory was that Herman and Laiser had driven to Laiser's house after the murder, and thus were not captured in an attempt to leave the island that night.

ity, the admission of Exhibit 56 had an overwhelming impact on the jury. The record shows, however, that Herman's attorney made certain that the self-serving motivations of the various prisoner witnesses to testify as they did was not lost on the jury. Each witness was thoroughly cross-examined as to his interests in the case, and any benefit he expected to receive by testifying.

Although there is no question that virtually the State's entire case relied upon testimony from convicted felons, Herman's attorney made strenuous efforts to damage their credibility and impeach their motives for testifying. For example, Gibson admitted that he was a liar and perjurer. He also testified that he had lied to the grand jury that Coffin told him that he had forged Herman's confession so that Coffin could receive leniency from the State and secure his own release. Prior to trial, Gibson changed his story and testified that Herman had admitted to him that he had killed Kreusler. Gibson was thoroughly cross-examined by Attorney Sepe who fully exposed to the jury the witness' character. In addition, Denono's damaging testimony was heavily attacked by Herman's attorney. It was revealed that Denono was presently awaiting trial for murder in Palm Beach County and that he had been previously convicted of two murders. The jury also learned that Denono's pending murder trial had been continued several times with the inference that the State wanted him first to testify in Herman's case. Most importantly, Attorney Sepe attacked Coffin's credibility by showing that prior to his contact with Herman in jail, he had engaged in a persistent pattern of using every means possible to avoid continued incarceration including various legal maneuverings and having himself transferred to a mental health center for treatment. In addition, Sepe fully developed Coffin's motives for testifying, including the fact that the State agreed not to oppose Coffin's attempts to secure a release from jail contingent on his cooperation in the investigation of the Kreusler murder and the veracity of the information that he supplied.

While Herman raises on appeal, and presented at trial, valid challenges to the credibility of all witnesses who testified that Herman had confessed to them, we find no grounds for disregarding the jury's implicit finding that one or more of these witnesses was telling the truth. Determinations of the credibility of witnesses are determinations of fact within the sole province of the jury. It was made known to the jury that the authorship of Exhibits 47 and 48 could not be established and that Exhibit 56 merely contained Coffin's recollection of the contents of two documents of unknown authorship. Thus, in order to reach its verdict, the jury must have credited the testimony of Coffin or the other witnesses who gave testimony consistent with the details contained in the alleged confessions.

Whether or not we would have reached the same result had we been the jury is irrelevant. The record contains sufficient evidence to warrant the jury's concluding that Coffin did not fabricate Exhibits 47 and 48. Further, the jury apparently credited the testimony that Herman told Denono, Baines, and Gibson about Herman's alleged relationship to the Kreusler murder despite defense counsel's thorough effort to impeach their credibility. The jury knew that all these witnesses had much to gain by currying favor with the Palm Beach County law enforcement personnel. Nevertheless, they patently credited the testimony, and the record does not establish a reasonable probability that their conclusions would have been different had Exhibit 56 and the references to it been excluded.

Herman's argument that he would likely have been exonerated if his Attorney had successfully objected to the admission of Exhibit 56 is simply not borne out by the evidence viewed in its entirety. Thus, assuming that Attorney Sepe had rendered ineffective assistance of counsel, any such error would not have prejudiced Herman's substantial rights by affecting the outcome of the trial. Consequently, we affirm the district court's judgment.

AFFIRMED.